## STATE OF CONNECTICUT *v.* EDWARD BONDI
### (5390)
### (5391)
## STATE OF CONNECTICUT *v.* JACK PARASCONDOLA
### (5410)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 3—decision released September 22, 1987

*Kenneth Wynne Bohonnon,* with whom, on the brief, was *R. William Bohonnon,* for the appellants (defendants).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Robert Katz,* assistant state's attorney, for the appellee (state).

HULL, J. After a trial to the court, the defendants were found guilty of operating their vessels in Connecticut waters for more than sixty days without being properly numbered and registered, in violation of General Statutes § 15-144 (h).[1] Each was fined one hundred

---

[1] General Statutes (Rev. to 1985) § 15-144 provides in pertinent part: "(a) Any owner desiring to obtain a vessel registration number or registration decal shall apply to the commissioner of motor vehicles and shall file evidence of ownership by affidavit or document. Upon receipt of an application in proper form and the numbering fee, the commissioner of motor vehicles shall assign a registration number or registration decal and provide the owner with a temporary certificate of number or temporary certificate of decal. The commissioner of motor vehicles shall issue two registration decals and a permanent certificate. A registration decal shall be displayed on each side of the vessel at the bow in a manner prescribed by the commissioner of environmental protection. The certificate shall state the name of the owner, his address, a description of the vessel, its hull identification number, the expiration date of the certificate and such other information as the commissioner of environmental protection may prescribe by regulations. Such certificate shall be carried aboard and shall be available for inspection upon the vessel for which it is issued whenever the owner or any person authorized by him is aboard such vessel, except that the certificate of number for a vessel which is less than twenty-six feet and which is rented for noncommercial purposes for less than twenty-four hours may be retained on shore by the owner of such vessel or his agent at the place where such vessel departs or returns. If such certificate is retained on shore, a rental agreement signed by the owner or his agent and by the person renting the vessel shall be carried aboard such vessel and shall be available for inspection. Such rental agreement shall contain the vessel number which appears on the certificate of number and the length of time for which such vessel is rented.

\* \* \*

"(h) Any person who operates or any owner who permits the operation of a vessel on the waters of this state which has not been numbered or registered in accordance with the provisions of this chapter and any other applicable section of the general statutes, shall have committed a violation and shall be fined not less than twenty-five nor more than two hundred dollars."

General Statutes § 15-142 provides in pertinent part: "(a) Every vessel used upon the waters of this state shall be numbered, except as otherwise

dollars. The cases were consolidated for appeal. From the judgment rendered, the defendants have appealed, claiming (1) that the evidence presented was insufficient to find violations of the statute, (2) that the defendants were not afforded their sixth amendment rights, (3) that General Statutes § 15-142 et seq. is "not fairly apportioned," (4) that federally documented vessels are not subject to state imposed requirements of payment of local taxes as a precondition to registration, (5) that the tax imposed by General Statutes § 15-142 et seq. is violative of the United States constitution as a tonnage tax, (6) that the imposition of

provided in this section and section 15-143. For purposes of this section and said section 15-143, any launching, mooring or operation of a vessel upon the waters of this state shall be deemed to be a use of such vessel upon the waters of this state. No person shall launch, moor or operate and no owner shall permit the launching, mooring or operation of any vessel unless (1) the owner holds a valid, effective certificate of number awarded by this state or by the United States or by another state pursuant to the provisions of the Federal Boat Safety Act of 1971 and the identification number set forth in such certificate is displayed on each side of such vessel at the bow, (2) the owner holds a valid marine document issued by the United States Coast Guard or (3) such vessel is otherwise not required to be numbered in this state under the provisions of said section 15-143.

"(b) Each vessel with respect to which the owner holds a valid marine document issued by the United States Coast Guard, a valid certificate of number awarded by the United States pursuant to the provisions of the Federal Boat Safety Act of 1971 or a valid certificate of number awarded by another state, which vessel is used upon the waters of this state for more than sixty days in any calendar year, shall be required to display a Connecticut registration decal. No person shall launch, moor or operate and no owner shall permit the launching, mooring or operation of any such vessel unless (1) the owner holds a valid, effective certificate of registration awarded by this state and (2) the registration decal is displayed as directed by the commissioner of environmental protection, provided the requirements of this subsection shall not be applicable, in the period commencing on the first day of October in any year to and including the thirteenth day of April next succeeding, to any such vessel in use upon the waters of this state exclusively for purposes of delivery of such vessel to a facility in this state for storage, including dry storage and storage in water by means of apparatus preventing ice damage to the hull, maintenance or repair or the actual process of storage, maintenance or repair of such vessel."

a use tax in this instance is an ad valorem tax, and (7) that administrative remedies need not be exhausted in this case.[2]

The pertinent facts are as follows. The defendant Edward Bondi was at all relevant times the president of Bondi Partners, a Delaware corporation. That corporation purchased the vessel Bachelor Three in April, 1985, in Boston, Massachusetts, for $260,000. Neither sales nor use tax was paid on the boat. The Bachelor Three was documented for pleasure by the federal government on November 13, 1985.

Bruce Gagliardi, a boat patrol officer for the department of environmental protection (DEP), recorded in his official record that the Bachelor Three was docked in Connecticut waters for more than sixty days without proper numbering and registration. On August 4, 1985, and August 11, 1985, a DEP boat patrol officer issued summonses to Bondi for violations of General Statutes § 15-144 (h). Bondi was tried separately for each violation.

The defendant Jack Parascondola was at all relevant times the president of Lady, Inc., a Delaware corporation. The corporation purchased the vessel Tender Lady in New York for $69,000. Neither sales nor use tax was paid on the boat. The Tender Lady was documented for pleasure by the federal government on February 14, 1984. Gagliardi recorded that the Tender Lady was docked in Connecticut waters for more than sixty days. A DEP boat patrol officer issued a summons to Parascondola on August 4, 1985, for violating General Statutes § 15-144 (h).

---

[2] We agree that the defendants have presented a colorable constitutional challenge to General Statutes § 15-142 et seq., and thus are not required to exhaust administrative remedies. *LaCroix* v. *Board of Education*, 199 Conn. 70, 80, 505 A.2d 1233 (1986).

# I

The defendants' first claim challenges the sufficiency of different portions of the evidence. They assert that the evidence was insufficient to prove that the vessels had been "in operation" as required by General Statutes § 15-144 (h). The defendants, however, failed to preserve this portion of their sufficiency of the evidence claim by neglecting to raise it at trial or claim it for review under the narrow "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1973). We therefore decline to review the defendants' claim of error. See *State* v. *Vasquez,* 9 Conn. App. 648, 654, 520 A.2d 1294 (1987).

The defendants also claim that the evidence was insufficient to establish that their vessels were present in Connecticut waters for more than sixty days in a calendar year.[3] They maintain that their vessels were not subject to the numbering and registration requirements of General Statutes § 15-142 because of the insufficiency of the evidence concerning the amount of time their vessels were in Connecticut waters.

With respect to Bondi's boat, a determination that the evidence in this area was insufficient would have

---

[3] The statutory scheme can be summarized as follows: General Statutes § 15-142 (a) requires every vessel operating in Connecticut waters to display a valid registration number, issued by the state of Connecticut, another state or the United States. Vessels bearing a valid registration number issued by another state or the United States are expressly exempted from the Connecticut vessel registration numbering system. General Statutes § 15-143 (a) (6). Such vessels, however, if used in Connecticut waters for more than sixty days in any calendar year, must display a valid Connecticut registration decal. See General Statutes § 15-142 (b). A registration number and a registration decal are obtained in the same manner. The registrant must file the proper application form and pay a registration fee to the commissioner of motor vehicles. General Statutes § 15-144 (a).The failure to display a proper registration number or decal in accordance with the statute is punishable by a fine of not less than $25 nor more than $200. General Statutes § 15-144 (h).

no effect. The sixty day presence in Connecticut waters rule is significant only when the boat in question already has been issued a valid certificate of number either by the federal government or by another state. Without such documentation and a certificate of number, the mere presence of a vessel in Connecticut waters, regardless of the duration, would require proper registration with numbering by the state. See General Statutes § 15-142. Bondi's boat had no documentation and no certificate of number,[4] and thus was in violation of General Statutes §§ 15-142 and 15-144 (h) regardless of the amount of time it was actually in Connecticut waters.

With respect to Parascondola's boat, we find that there is sufficient evidence in the record to sustain the court's finding that his vessel was present in Connecticut waters for more than sixty days. "[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt 'does not require a court to "ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt." ' . . . 'Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .' " (Emphasis in original; citation omitted.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Boat patrolman Gagliardi testified for the state that he visited various marinas daily and recorded the presence of unregistered vessels. His records and testimony establish that Bondi's boat was in Connecticut waters

---

[4] Bondi's boat was federally documented on November 13, 1985, some three months after the summonses were issued to him.

for seventy-six days in 1984, and that Parascondola's boat was present for sixty-six days during that same period.

We cannot review the credibility of a witness' testimony. That prerogative rests within the exclusive purview of the trier of fact. *State* v. *Crump,* 201 Conn. 489, 491, 518 A.2d 378 (1986). The trial judge chose to accept Gagliardi's accounting of the events. Thus, there is a sufficient evidentiary basis in the record to support the trier's determination that Parascondola's vessel was present in Connecticut waters for more than sixty days.[5]

## II

The defendants' second claim is that their sixth amendment right to cross-examine witnesses was abridged because they were not afforded the opportunity to cross-examine Gagliardi concerning his refusal to testify in three trials that occurred subsequent to the close of the present cases. The defendants did cross-examine Gagliardi, but did not, and could not cross-examine him regarding testimony he did not give.

The defendants cite no authority for the proposition that their sixth amendment rights extend to proceedings against other defendants that have not yet transpired. In light of the defendants' complete failure to provide any legal precedent for their claim, we will not review it.

## III

The defendants' next claim is that General Statutes §§ 15-142 through 15-144 are unconstitutional because boat registration is made contingent upon payment of

---

[5] The same evidentiary basis was also sufficient to determine that Bondi's boat was present in Connecticut waters for sixty days.

a use tax that violates the commerce clause[6] and supremacy clause[7] of the federal constitution.

With respect to the defendants' commerce clause claim, we need not reach the question of the statute's constitutionality because the defendants did not prove that their vessels were engaged in interstate commerce.

The defendants cite *State* v. *Zach,* 198 Conn. 168, 502 A.2d 896 (1985), and *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977), in support of their contention. In *Complete Auto Transit, Inc.,* the United States Supreme Court set out a four-prong analysis to aid in the determination of whether there exists an impermissible burden on interstate commerce.[8] The analysis cannot be done, however, without some showing that interstate commerce exists in this case. The only evidence in the record concerning the use of the vessels was that they were used exclusively for pleasure. Bondi never asserted that his vessel was engaged in any form of

[6] Section 8 of article first of the United States constitution provides in relevant part: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the Several States, and with the Indian Tribes . . . ."

[7] Clause 2 of article six of the United States constitution provides in relevant part: "This Constitution, and all the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

[8] In *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977), the Mississippi tax on the privilege of doing business in the state was held not to violate the commerce clause *when it applied to an interstate activity* with a substantial nexus with the taxing state (here the transportation by motor carrier in Mississippi to Mississippi dealers of cars manufactured outside the state), is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state.

interstate commerce. Parascondola stated at trial that his vessel was chartered for pleasure fishing. He offered no evidence, however, in support of that contention. "We believe that more than a bald assertion is necessary to sustain the [burden of proving] that these vessels were engaged in interstate commerce." *State* v. *Zach,* supra, 181; see also *Container Corporation of America* v. *Franchise Tax Board,* 463 U.S. 159, 165–66, 103 S. Ct. 2933, 77 L. Ed. 2d 545, reh. denied, 464 U.S. 909, 104 S. Ct. 265, 78 L. Ed. 2d 248 (1983). Absent such evidence, we will not consider a claim that the commerce clause was violated.

### IV

The defendants' next argument is that federally documented vessels are not subject to state imposed requirements of payment of use tax as a precondition to registration. As the record indicates that only Parascondola's vessel was federally documented at the time the summonses were issued, we will consider this claim only as to him.

The defendants presume, in making their argument, that the payment of the use tax must be made before registration can be obtained. An analysis of the statutory scheme makes evident, however, that payment of the use tax may not be required before registration is permitted. The defendants *are* obliged to file a use tax return pursuant to General Statutes § 12-414 (2). Even if the defendants considered that the use tax was not warranted, the return should have been filed. The use tax provisions then furnish two avenues for contesting payment. First, the defendants had the option of filing a use tax return detailing the reasons that no tax was payable. If the commissioner then determined, to the contrary, that a deficiency assessment was warranted; see General Statutes § 12-415; the defendants could seek reassessment; see General Statutes

§ 12-418 (1); and appeal a further adverse decision directly to the Superior Court. General Statutes § 12-422.

The second option would be to file a return, pay the use tax, and then seek a refund. General Statutes § 12-425 (2). If the commissioner refused to refund the amount paid, the decision could be appealed to the Superior Court. General Statutes § 12-422.

In light of that statutory scheme, it is evident that the payment of local taxes is not necessarily a precondition to registration of a vessel. The defendants' claim must therefore fail.

## V

The defendants next claim that the application of a use tax against their boats is tantamount to the imposition of an impermissible tonnage tax. Article one, § 10, clause 3, of the United States constitution provides that "[n]o State shall, without the Consent of Congress, lay on Duty of Tonnage . . . ." In *Clyde Mallory Lines* v. *Alabama,* 296 U.S. 261, 265–66, 56 S. Ct. 194, 80 L. Ed. 215 (1935), the United States Supreme Court defined the duty on tonnage as follows: "[T]he prohibition against tonnage duties has been deemed to embrace all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port. . . ." (Citations omitted.)

Once again the defendants ignore the statutory scheme involved here. They have not proved that they will ever have to pay that tax. The statutory scheme provides for exceptions to the requirement that use tax be paid on vessels in Connecticut waters for more than sixty days. " 'Determination of the scope and constitutionality of legislation in advance of its immediate

adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.' *International Longshoremen's & Warehousemen's Union, Local 37* v. *Boyd*, 347 U.S. 222, 224, 74 S. Ct. 447, 98 L. Ed. 650 (1954). In the absence of weighty countervailing circumstances, facial invalidation of a statute is improvident. *Brockett* v. *Spokane Arcades, Inc.*, 472 U.S. 491, 501–502, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985)." *Motor Vehicle Manufacturing Assn. of the United States, Inc.* v. *O'Neill*, 203 Conn. 63, 75, 523 A.2d 486 (1987).

As the defendants have not paid the tax, and have not shown that they will ever be required to pay the tax, this claim is not ripe and will not be considered by this court.

For the same reason, we do not address the defendants' claim that imposition of a use tax in this instance is an ad valorem tax.

There is no error.

In this opinion the other judges concurred.