MAGIC II, INC. *v.* OREST T. DUBNO, COMMISSIONER OF REVENUE SERVICES
(13213)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued December 11, 1987—decision released February 16, 1988

---

K. *Wynne Bohonnon,* with whom were R. *William Bohonnon,* and, on the brief, *David Bohonnon,* for the appellant (plaintiff).

*Robert L. Klein,* assistant attorney general, with whom were *Bonnie D. Stewart,* certified legal intern, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

HULL, J. The plaintiff has appealed from an assessment by the commissioner of revenue services of a use tax, which totaled $14,831 including penalty and interest, with respect to a sailing yacht owned by it. The commissioner assessed the tax under General Statutes § 12-416 on the basis of the plaintiff's failure to file a return reporting its Connecticut use tax liability under General Statutes § 12-411[1] on its purchase of a yacht out-of-state for use in Connecticut. The plaintiff sought a reassessment and was granted a hearing pursuant to General Statutes § 12-418 (2). The original assessment was confirmed after a hearing by the deputy commissioner. He found that the vessel was, in reality, a pleasure craft purchased for use by the corporation's two shareholders and that the corporation itself and its purported conducting of business was a mere sub-

---

[1] "[General Statutes] Sec. 12-411. THE USE TAX. (1) Imposition and rate. An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state . . . ."

terfuge. The plaintiff appealed this decision to the Superior Court. The matter was referred to *Hon. Charles S. House,* state trial referee, who exercised the authority of the Superior Court in hearing the appeal. At the hearing on the appeal the entire administrative record was admitted into evidence. Herbert W. Owen, the president of the corporation, testified at that hearing before the deputy commissioner and also at the court hearing. In its memorandum of decision dated December 15, 1986, the court summarized the deputy commissioner's findings of fact as supplemented in essential detail by evidence before the court and found the deputy commissioner's finding assessing the use tax fully supported by the evidence. The facts as found by the court are not seriously disputed.

Owen organized the plaintiff as a Delaware corporation on September 21, 1976. Since its organization, Owen has served as the president, treasurer and sole director. He is also the owner of 90 percent of the corporation's stock. His wife, Alice Owen, in September, 1976, owned a house in and was a resident of Old Saybrook. Since the corporation's organization she has been vice president, secretary and the owner of the remaining 10 percent of the stock. On March 23, 1977, in Maine, the plaintiff purchased a yacht known as "Magic." Owen made a deposit on the boat on September 1, 1976, before the organization of the corporation. He was then a resident of and domiciled in Connecticut. The boat was delivered on March 23, 1977, for $223,433. Owen guaranteed a $150,000 bank loan used to finance the purchase.

Owen signed an affidavit that the corporation would remove the yacht from Maine immediately upon delivery. The corporation was therefore not liable for the Maine use tax. Owen registered the yacht with the United States Coast Guard as a pleasure vessel and executed a sworn statement that it would be used exclu-

sively as a pleasure vessel. He testified that when it was purchased it was intended that the yacht would be used in Connecticut. On June 1, 1977, Owen sailed the yacht to Old Saybrook, where a well attended christening party was held. He then sailed it back to Maine a few days later to be checked over. The yacht has been back in Connecticut periodically since. It was stored at a Mystic shipyard during the winters of 1979–80 and 1980–81. In September, 1977, Owen filed an application with the Old Saybrook harbor master for a 1978 mooring for a forty foot yacht named Magic, and he has made annual applications for a yacht mooring since that time.

The court concluded as follows: "The use tax is an excise tax imposed on the storage, acceptance, consumption or other use in Connecticut of tangible personal property purchased from any retailer for storage, acceptance, consumption or other use in this state. General Statutes Sec. 12-411. It was enacted to complement the sales tax. *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597 [362 A.2d 847 (1975)]. As noted in *Stetson* v. *Sullivan,* 152 Conn. 649, 653 [211 A.2d 685 (1965)], 'three conditions must exist to create taxability. First, there must be a purchase of tangible personal property; second, the purchase must have been made for the purpose of storage, use or other consumption in this state; and, third, there must have been such storage, use or other consumption.' It is also pertinent to note that the burden of proving any claimed exceptions to a tax is on the taxpayers. *Modugno* v. *Tax Commissioner,* 174 Conn. 419, 421 [389 A.2d 745 (1978)], as is the burden of proving that an assessment is erroneous. *H.B. Sanson, Inc.* v. *Tax Commissioner,* 187 Conn. 581, 586 [447 A.2d 12 (1982);] *Fusco-Amatruda Co.* v. *Tax Commissioner,* supra, 599.

"The hearing officer found that each of the three conditions precedent to a finding that the plaintiff was lia-

ble for the use tax assessment existed and the evidence fully supports his findings and conclusions: (a) the yacht was purchased in Maine by the plaintiff corporation; (b) Owen, a Connecticut resident, the president of the corporation, owner of 90% of the corporation's stock and its sole director, intended that it be brought to Connecticut and it was; (c) . . . the plaintiff purchased the yacht with the intention of using it in Connecticut as it was so used. The evidence fully supports this finding as does the statutory presumption contained in General Statutes Sec. 12-411: 'It shall be presumed that tangible personal property shipped or brought to this state by the purchaser was purchased from a retailer for storage, use or other consumption in this state.' While Owen was extremely evasive in responding to inquiries as to the full extent of the corporation's use of the yacht in Connecticut, the evidence fully supports a finding that there was such use. The statute does not require a major or principal use in the state. Even a very brief and limited use is sufficient to justify the imposition of the tax. *Stetson* v. *Sullivan,* [supra, 654]; *United Aircraft Corporation* v. *Connelly,* 145 Conn. 176, 182 [140 A.2d 486 (1958)]."

The plaintiff briefed two issues on appeal: (1) whether the trial court erred in adopting the findings of the commissioner of revenue services in assessing the plaintiff a use tax; and (2) whether a state may assess a use tax against a corporation with no taxable situs within the state and whose sole connection with the state is the passage through the state of a federally documented vessel owned by the corporation.

We conclude that, despite the ornate wrappings of the plaintiff's appeal, it is a patent and necessarily futile attempt to have this court retry the facts, which we cannot do. The plaintiff recites certain facts in its brief concerning Owen's residence in Key Largo, Florida, his use of the yacht one winter in Florida and his use

of the Old Saybrook mooring for a twelve foot power-boat. These facts were not found by the trial court.

"Ordinarily we do not ' "resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings or exhibits which are not part of the record." ' *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983). References in the 'statement of facts' in a brief or references to testimony in the transcript, even if uncontradicted, do not constitute facts in the case. Where the factual basis of the court's decision is unclear, 'proper utilization of the motion for articulation serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. "It remains the appellant's responsibility to secure an adequate appellate record . . . ." ' *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983)." *Pointina Beach Assn., Inc.* v. *Stella,* 1 Conn. App. 341, 343, 471 A.2d 970 (1984). The plaintiff made no motion for articulation of the memorandum of decision in the trial court or in this court under Practice Book §§ 4051 or 4061.

We note that even if these "facts" had been found by the trial court, or were in the deputy commissioner's finding upon which the trial court largely based its conclusions, they would not have changed the result reached by the trial court. The state also recites various "facts," not found by either the trial court or the deputy commissioner, tending to show that Owen's claimed use of the yacht as a charter boat was a sham. To the extent that these "facts" are not properly found or contained in exhibits we do not consider them.

We need not dwell on the court's finding that the three necessary elements for imposition of a use tax were satisfied. *Stetson* v. *Sullivan,* supra, 653. The plaintiff purchased the yacht from a retailer with the

intent of using it in this state. Owen's testimony at the hearings before the trial court and the deputy commissioner clearly show that he intended to use the yacht in Connecticut when he purchased it. He so testified in the hearing before the deputy commissioner. This intent, by the plaintiff's sole director and president, is that of the corporation. *Goodspeed* v. *East Haddam Bank,* 22 Conn. 530, 540 (1853). Concerning the third element, the yacht was used and stored in Connecticut. General Statutes § 12-407 defines the words "storage" and "use" as follows:

"(4) 'Storage' includes any *keeping or retention in this state* for any purpose except sale in the regular course of business or subsequent use solely outside this state of tangible personal property purchased from a retailer.

"(5) 'Use' includes the *exercise of any right or power* over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business." (Emphasis added.)

The court's findings met both of these definitions. An extremely limited use is sufficient to constitute a "taxable use" under the use tax. *United Aircraft Corporation* v. *Connelly,* supra, 181 (during transportation title to certain items was in the plaintiff; the plaintiff made a taxable use during this period by retaining ownership of the facility with all of the rights, powers and privileges incident thereto).

Numerous decisions in other jurisdictions also have held that a very limited use is sufficient for imposition of the use tax. See, e.g., *Louisville Title Agency* v. *Kosydar,* 43 Ohio St. 2d 109, 330 N.E.2d 899 (1975) (repairs and installation of new equipment); *Randall* v. *Norberg,* 121 R.I. 714, 720, 403 A.2d 240 (1979) (repairs, maintenance and repeated social visits); *Sport-*

*fisherman Charter, Inc.* v. *Norberg,* 115 R.I. 68, 340 A.2d 143 (1975) (chartering of a fishing boat).

The plaintiff drifted away from the narrow issue involved in this case by making numerous claims in its brief based on federal law which, as will be seen, are irrelevant or are foreclosed by the trial court's unchallenged findings in this case. We will, nevertheless, consider each claim seriatim in order to slay this particular Hydra.

## The Plaintiff's Claim of Exclusive Federal Maritime Jurisdiction

The plaintiff argues without citation of authority that federally documented vessels may not be taxed by the states for passing through navigable waters. This claim is inapposite since the use tax in this case was imposed for the use and storage of the yacht, Magic, in Connecticut. A similarly inapplicable claim is that "Connecticut's attempt to impose a sales or use tax on a federally documented vessel *with no connection to Connecticut* is violative of the federal scheme of regulation." (Emphasis added.) To state this proposition is to answer it. The plaintiff finally claims that the imposition of a use tax in this case is an "impermissible 'end around' the maritime lien process and violative of constitutional and maritime law." Although a bank placed a $150,000 Preferred Ship's Mortgage on the yacht, there is no issue in this case involving that lien.

## The Plaintiff's Claim that Spurious "Use Tax" Assessment Violates Due Process

The plaintiff's argument of this issue is murky at best. The plaintiff repeatedly challenges the nexus of the yacht with the state of Connecticut. It states flatly once again, that "[n]o use tax is owed in the instant case because the vessel was not used, stored, or consumed

in Connecticut." We need not restate the court's well supported conclusion in this regard. The plaintiff further claims that "[a] federally documented vessel, owned by a Delaware Corporation with no connection save occasional presence in Connecticut is not liable for sales or use tax in this state." It appears that the plaintiff's claim involves allegations of both a due process and a commerce clause[2] violation. This claim is totally vitiated by the court's conclusion referred to above.

This court recently noted in *State* v. *Zach,* 198 Conn. 168, 181, 502 A.2d 896 (1985), where the plaintiffs were also claiming that their yachts were engaged in interstate commerce and were beyond the taxing authority of the state of Connecticut, that "more than a bald assertion is necessary to sustain the conclusion that these vessels were engaged in interstate commerce." The trial court put this claim to rest in its memorandum of decision as follows: "So far as the plaintiff's reliance upon a claim that imposition of the use tax was prohibited by the Commerce clause of the United States Constitution is concerned, it suffices to note that the corporation failed to prove that it was ever engaged in interstate commerce and, most significantly, not at the time of the yacht's first use and storage in Connecticut at which time, liability for the use tax arose. See *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 677 [427 A.2d 873 (1980);] *Caldor* v. *Heffernan,* 183 Conn. 566, 575 [440 A.2d 767 (1981);] *Fusco-Amatruda Co.* v. *Tax Commissioner,* [supra, 608–10;] and *New England Yacht Sales* v. *Tax Commissioner,* 198 Conn. 624, 636–37 [504 A.2d 506 (1986)], where the court observed that 'the plaintiff cannot rely on an exemption that did not yet exist when its tax obligation became due.' See also *State* v. *Zach,* [supra]."

[2] Article one, § 8, of the constitution of the United States reads in part as follows: "The Congress shall have power . . . To regulate Commerce . . . among the several States . . . ."

Even if we assume, arguendo, that the plaintiff's yacht was engaged in interstate commerce, " 'a state tax is not *per se* invalid because it burdens interstate commerce, since interstate commerce may constitutionally be made to pay its way.' " *State* v. *Zach,* supra, 182, quoting *Maryland* v. *Louisiana,* 451 U.S. 725, 754, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981). A state tax that " 'is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State' . . . [places] no impermissible burden on interstate commerce . . . ." *State* v. *Zach,* supra, 182, quoting *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977).

The plaintiff relies heavily on *Complete Auto Transit, Inc.,* in support of its position. This reliance is, however, misplaced. The substantial nexus with the taxing state is well established by the trial court's findings. There is no evidence in this record that the plaintiff paid a use tax to any other state, thus there is nothing to be apportioned. There is no evidence that the tax unfairly discriminates against interstate commerce. The fourth *Complete Auto Transit, Inc.* element was commented on in *Commonwealth Edison Co.* v. *Montana,* 453 U.S. 609, 629, 101 S. Ct. 2946, 69 L. Ed. 2d 884 (1981), wherein the court stated: *"when the measure of a tax bears no relationship to the taxpayers' presence* or activities in a State, a court may properly conclude under the fourth prong of the *Complete Auto Transit, Inc.* test that the State is imposing an undue burden on interstate commerce."* (Emphasis added.)

The record is likewise silent on this matter. Before a trial court can consider the application of the *Complete Auto Transit, Inc.* criteria in a given case, it must

first have found that the vessel in question was, in fact, engaged in interstate commerce. See *State* v. *Zach,* supra, 182–83.

The plaintiff again cites no pertinent authority for his claimed due process violation. The argument is a potpourri of argumentative assertions all based on the claim of a lack of sufficient nexus to Connecticut. The plaintiff stresses that the vessel is "federally documented and entitled to ply federal waters and the many waters of the states." This court in *State* v. *Zach,* supra, 174–75, faced a claim that the vessels in question were "federally documented" and we addressed this issue in a footnote: "According to the stipulation, the vessels in question are registered under 46 U.S.C. § 11, which was repealed by Public Law No. 96-594, title 1, § 127, 94 Stat. 3459 (1980). We can only assume that these vessels are now registered under 46 U.S.C.A. § 12101 et seq. (1983). Since the defendants claim, in part, that General Statutes § 15-142 is 'contrary to the established federal system of admiralty jurisdiction' . . . we believe it appropriate on remand that they introduce into evidence the documents and federal statutes pertaining to the registry of these vessels. Only then may their claim under the supremacy clause be properly evaluated." Id., 174–75 n.5. The plaintiff's argument boils down once again to reliance upon *Complete Auto Transit, Inc.,* which, as we have already indicated, is not relevant where the trial court has found that the vessel in question was not engaged in interstate commerce. This argument founders on the rock of the trial court's and the deputy commissioner's findings to that effect. Accord *State* v. *Bondi,* 12 Conn. App. 417, 424, 531 A.2d 151 (1987), where the court stated "[w]ith respect to the defendants' commerce clause claim, we need not reach the question of the statute's constitutionality because the defendants did not prove that their vessels were engaged in interstate commerce."

The plaintiff also argues that the imposition of the use tax violates the "home port" doctrine. This claim was disposed of in *State* v. *Zach.* "[A]n oceangoing vessel is taxable only in the jurisdiction of its home port, and not in each jurisdiction through which it happens to pass. *Hays* v. *Pacific Mail Steamship Co.,* 58 U.S. 596, 15 L. Ed. 254 (1855). . . . In *Japan Line, Ltd.* v. *County of Los Angeles,* 441 U.S. 434, 99 S. Ct. 1813, 60 L. Ed. 2d 336 (1979), the United States Supreme Court traced the development and demise of the 'home port doctrine,' stating that '[t]his theory of taxation, of course, has fallen into desuetude, and . . . has yielded to a rule of fair apportionment among the States.' Id., 442. The issue in that case was whether a state may impose an apportioned ad valorem property tax on instrumentalities of commerce 'that are owned, based, and registered abroad and that are used exclusively in international commerce . . . .' Id., 444. While concluding that the tax could not constitutionally be imposed on the foreign instrumentalities at issue, the court assumed that if the instrumentalities had been used in 'purely interstate commerce, *Complete Auto* would apply and be satisfied, and our Commerce Clause inquiry would be at an end.' Id., 445. From this dicta *we conclude that the 'home port doctrine' as a rule of state taxation of vessels engaged exclusively in interstate commerce has been superseded by the apportionment rule in Complete Auto."* (Emphasis added.) *State* v. *Zach,* supra, 183–84.

### The Plaintiff's Claim that Use Tax Assessment in This Instance a Tonnage Tax

Article one, § 10, clause 3, of the United States constitution reads in part as follows: "No state shall, without the Consent of congress, lay any Duty of Tonnage . . . ." The Appellate Court in *State* v. *Bondi,* supra,

427, considered this identical claim and ruled that "[a]s the defendants have not paid the tax . . . this claim is not ripe and will not be considered by this court." In this case, however, the use tax has been assessed and upheld by the Superior Court.

The United States Supreme Court in *Clyde Mallory Lines* v. *Alabama,* 296 U.S. 261, 264–65, 56 S. Ct. 194, 80 L. Ed. 215 (1935), stated as follows: "It seems clear that the prohibition against the imposition of any duty of tonnage was due to the desire of the Framers to supplement Art. I, § 10, Clause 2, denying to the states power to lay duties on imports or exports, by forbidding a corresponding tax on the privilege of access by vessels to the ports of a state, and to their doubts whether the commerce clause would accomplish that purpose. If the states had been left free to tax the privilege of access by vessels to their harbors the prohibition against duties on imports and exports could have been nullified by taxing the vessels transporting the merchandise."

A duty of tonnage within the meaning of the Constitution is a charge upon a vessel, as an instrument of commerce, "for entering [or lying in] or leaving a port." *Huse* v. *Glover,* 119 U.S. 543, 549–50, 7 S. Ct. 313, 30 L. Ed. 487 (1886). All taxes and duties, regardless of name or form, which operate to impose a charge of this type are included, whether or not they are measured by the tonnage of the vessel. *Clyde Mallory Lines* v. *Alabama,* supra, 265–66.

The tax in this case is obviously not imposed on the privilege of entering, remaining in or departing from a port. It is based on the purchase of a yacht for use in Connecticut, and such use in Connecticut. It is assessed once. Its assessment has no relation to a vessel entering or leaving a port. Thus, it is not invalid

as constituting a "Duty of Tonnage." See *In re Los Angeles Lumber Products Co.,* 45 F. Sup. 77, 81–82 (S.D. Cal. 1942).[3]

The conclusions of the court are legally and logically correct and find support in the facts set out in the memorandum of decision; the facts set out in the decision are supported by the evidence. The court's decision was not clearly erroneous. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 435 A.2d 24 (1981).

There is no error.

In this opinion the other justices concurred.

---

[3] The plaintiff's remaining briefed arguments require only summary disposal as follows:

The attempt to pierce the corporate veil is improper: The trial court specifically declined to invoke this doctrine to hold Herbert W. Owen personally liable for the use tax assessed. He was never personally assessed for the tax and is not a party to this litigation.

Taxation of federally documented vessels: This section is a rehash of arguments previously rejected in this opinion.

Federally documented vessels are not subject to state imposed regulations of payment of local taxes as a precondition to registration: There is no issue in this case concerning such a claim.

The imposition of a use tax in this instance is an ad valorem tax: This is, once again, a rehash of the nexus questions and contains no citation of authority or legal analysis whatsoever other than the mere statement of the issue itself. See *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984) (" '[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court' ").