STATE OF CONNECTICUT *v.* ANGEL LUIS ROMAN
(9294)

DALY, O'CONNELL and HEIMAN, Js.

Argued June 4—decision released September 17, 1991

*Donald D. Dakers,* public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief were *Michael Dearington,* state's attorney, and *David Gold,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a and 53a-55 (a) (3). He also appeals from his sentencing for summary criminal contempt of court arising out of his conduct in the presence of the court during the trial. The defendant had previously pleaded guilty to carrying a pistol without a permit in violation of General Statutes § 29-35. The trial court imposed a twenty year prison sentence on the manslaughter conviction and five years on the pistol permit conviction, to run concurrently, plus six months for contempt of court to run consecutively. The defendant's total effective sentence is twenty years and six months.

The defendant raises three issues relating to the contempt sentencing and also claims (1) that the trial court improperly instructed the jury on the defense that he had acted in the defense of a third person, (2) that defense counsel's prior representation of the manslaughter victim should have barred him from representing the defendant, and (3) that the court relied on improper information in imposing sentence on the manslaughter conviction. We affirm the trial court's judgment.

The jury could reasonably have found that the defendant observed three or four men punching a young teenager and, in an attempt to break up the altercation, the defendant, who was on the opposite side of the street, fired a shot from a handgun. The bullet struck and killed an innocent bystander.

At trial, the court found the defendant in contempt when he refused to comply with the court's order to disclose the name of the friend from whom he claimed to have obtained the gun. The court delayed the imposition of a penalty on the contempt finding until the time of sentencing on the manslaughter and pistol permit convictions.

The defendant attempts in his appeal of the underlying manslaughter conviction to include his objections to the contempt process.[1] He concedes that his refusal to answer a question, when directed to do so by the court, constituted criminal contempt and that the trial court had authority to punish him summarily for this contumacious refusal. Despite this concession, the defendant argues that the trial court's sentencing procedure was improper and that he is entitled to review of the contempt proceeding by way of appeal to this court. We do not agree.

Our case law has unwaveringly held that a writ of error is the sole method of review of criminal contempt proceedings; *Naunchek* v. *Naunchek,* 191 Conn. 110, 113, 463 A.2d 603 (1983); and a writ of error can be brought only to the Supreme Court. Practice Book § 4143 (a); General Statutes § 52-272. The Appellate Court has no jurisdiction to entertain a writ of error. An appeal and a writ of error are totally distinct proceedings. An appeal is a stage in the prosecution of a case, but a writ of error is an independent action, com-

---

[1] The defendant has not appealed the pistol permit conviction.

menced by service and return of process as in civil cases. *Michelin* v. *MacDonald,* 114 Conn. 582, 584, 159 A. 636 (1932).

The defendant cites no authority, nor has any come to our attention, that deferring sentencing on a summary criminal contempt finding until the time of sentencing on the underlying crime nullifies the writ of error requirement. Accordingly, we conclude that this court lacks jurisdiction to review the defendant's summary contempt claims.

The defendant next claims that the trial court's jury instruction on defense of a third person was incorrect because the court defined "great bodily harm" in terms of "serious physical injury."[2] The standard of review for this claim is whether it is reasonably possible that the jury was misled by the instruction. *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984).

A person is justified in using deadly force if he reasonably believes that another person is (1) using or about to use deadly physical force, or (2) is inflicting or about to inflict great bodily harm. General Statutes § 53a-19 (a).[3] Deadly physical force is defined by statute as "physical force which can be reasonably expected to cause death or serious physical injury." General Statutes § 53a-3 (5). Accordingly, the threat of serious physical injury and the threat of great bodily harm are two

---

[2] The defendant withdrew his appellate claim that the trial court failed to instruct the jury properly on the subjective standards applicable to the defense of justification.

[3] The pertinent part of General Statutes § 53a-19 (a) provides: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

separate and distinct justifications for the use of deadly force in defense of a third person. *State* v. *Havican,* 213 Conn. 593, 600, 569 A.2d 1089 (1990).

In the present case, the trial court instructed the jury that "[g]reat bodily harm is physical injury which creates a substantial risk of death or which causes serious disfigurement, serious impairment of health, or serious loss or impairment of a function of any bodily organ."[4] The state contends that this instruction, albeit improperly characterized as the definition of "great bodily harm," did not mislead the jury because it adequately defined serious physical injury and was sufficient to conform with the defendant's actual theory of defense, which was that the defendant was attempting to prevent serious physical injury to a third person.

The purpose of the jury charge is to assist the jury in applying the law correctly to the facts that it finds are established. Id., 603. "The test to be applied to any part of the charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." *State* v. *DeJesus,* supra. We conclude that the trial court's improper labeling of the definition of "serious physical injury" as a definition of "great bodily harm" did not mislead the jury, or result in an unjust rejection of the defendant's justification theory. At best, this mislabeling amounted to harmless error.

The defendant also claims that his trial counsel should have been disqualified. Before the start of trial, the attorney who had been appointed to represent the defendant informed both the court and the defendant that he had previously represented the victim. Counsel expressed his opinion to the defendant and to the court that his knowledge of the victim's background

---

[4] This is the statutory definition of serious physical injury as contained in General Statutes § 53a-3 (4).

did not pose a potential conflict of interest because this case involved an accidental and unintentional death.

" 'A trial court has the obligation to inquire into the possibility of a conflict of interest when "it knows or reasonably should know" that a potential conflict exists.' " *State* v. *Jennings,* 216 Conn. 647, 655, 583 A.2d 915 (1990), quoting *State* v. *Williams,* 203 Conn. 159, 168, 523 A.2d 1284 (1987). The trial court thoroughly canvassed the defendant, who acknowledged awareness of the prior representation and was satisfied that it would not cause a problem. On the basis of the defense counsel's representations and the defendant's statements, the trial court allowed defense counsel to continue his representation of the defendant. At no time did defense counsel, or the defendant himself, object to the continued service of this counsel. To the contrary, they both advised the trial court that there was no reason why defense counsel should not continue in this case.

It is difficult to comprehend defense counsel's reasoning on this claim. He is the same attorney who advised the trial court and the defendant that no conflict existed, yet he now comes before us and complains because the trial court allowed him to represent the defendant. It is fundamental that actions induced by the appellant cannot form the basis of a claim on appeal. *State* v. *Day,* 12 Conn. App. 129, 134, 529 A.2d 1333 (1987). "[A party] may not claim as error that which he has requested . . . ." *LaCroix* v. *LaCroix,* 189 Conn. 685, 688, 457 A.2d 1076 (1983); *Nisbet* v. *Olmeda,* 15 Conn. App. 6, 17, 544 A.2d 642 (1988). The trial court properly relied on defense counsel's representations and on the defendant's responses in determining whether the defendant was adequately apprised of the risk arising out of the prior representation. *State* v. *Williams,* supra, 170. We conclude that the record adequately discloses that the defendant knowingly and

intelligently waived his right to complain about the victim's prior representation by defense counsel.

Under the circumstances of this case, the defendant concedes that his constitutional right to effective assistance of counsel was not violated by his appointed attorney's prior representation of the victim in an unrelated case. Instead, defense counsel seeks review because neither he nor the court considered the issue of whether his representation of the defendant constituted an ethical violation. With exceptions not applicable here, it is well established that issues not raised in the trial court will not be considered on appeal. *State* v. *Bondi,* 12 Conn. App. 417, 421, 531 A.2d 151 (1987). Consequently, we decline to review this issue.

The defendant next argues that the trial court improperly considered false and inaccurate information in determining the manslaughter sentence. When imposing sentence, a judge may consider matters that would not be admissible at trial. *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986). Due process requires only that the information relied on have some minimal indicia of reliability. *State* v. *Collette,* 199 Conn. 308, 320, 507 A.2d 99 (1986). The information that the defendant argues was inappropriately considered by the court came solely from the evidence presented at trial. It was not extraneous material. The sentencing court properly considered the trial evidence, including the credibility of witnesses, for sentencing purposes. The sentencing court has broad discretion in imposing sentence within statutory limits. Id. We are not persuaded that the court abused this discretion.

The judgment is affirmed.

In this opinion the other judges concurred.