Memorandum of Decision
This case presents a petition for the termination of the parental rights of Carmen M. R. and Errol L. . who are the biological parents of the minor child Karen R. The minor child Karen is presently 2 years of age. She has lived for the past two years with foster parents who wish to adopt her if the parents rights are terminated. The child, by all accounts, has achieved normal developmental milestones, and is happy, well-adjusted, bonded and views her foster parents as her natural parents. These are the only parents the child has ever known.
The male biological parent of Karen, Errol L., has never had any contact with the child. Subsequent to the birth of Karen, Errol fathered another child by Carmen, Gabriel R. who is Karen's full sibling. The children were both removed from Carmen at birth. Gabriel was born in Massachusetts and is in foster care in that state. As far as is known, Errol has had no contact with either child, nor has he expressed interest, support or concern for either child.
The court finds that the mother has appeared and has both a court appointed attorney and Guardian Ad Litem. The father has been served by publication in the Hartford Courant on April 29, 1997 after diligent, but futile, attempts were made to locate him. The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court and reasonable efforts have been made to reunify this family.
The court having read the verified petitions, the social studies, the various documents entered into evidence, judicially noticed the documents set forth in a Motion for Judicial Notice, which was granted by agreement, and heard the testimony of Dr. Richard Sadler and various case workers, makes the following findings by clear and convincing evidence.
The mother Carmen M. R attended the hearing with counsel, cross examined the witnesses and contested the petitioner's case and is in opposition to the termination of her parental rights. The court finds the following relevant facts. The child was born CT Page 13811 on March 13, 1995. A month prior to the birth of the child Carmen had been admitted to the Manchester Memorial Hospital with a factitious disorder. "She is apparently well known to Hartford Hospital Outpatient Psych and OB Gyn clinics. . . ." An earlier episode at the Manchester Hospital was described in an affidavit prepared on March 16, 1995 by a nurse at the Family Birthing Center. Susan Kirch, R.N. wrote "[C]armen presented as a pregnant diabetic patient from the shelter who had fallen down a flight of stairs. She had not had any pre-natal care and stated that the pregnancy was the result of a rape. She also stated the father of the baby had assaulted her with a baseball bat the evening she went to the shelter. Her answers were vague and confusing at times. She was reluctant to submit to any interventions, required coaxing for an intravenous laboratory test and finger-stick blood sugars. . . . . In my encounter with Carmen, I have seen her affect vary from awake, alert and cooperative to lethargic and sometimes non-verbal, to aggressive and difficult to reason with, all within one shift. After Carmen has gone through an aggressive, non-compliant episode, she then will just go to sleep and/or become non-communicative."
Karen Blank M.D. wrote an affidavit in support of the Order of Temporary Custody. In her affidavit, Dr. Blank states in part, "[T]he explanations and history that she described were characterized by illogical thinking and marked inconsistencies. . When asked about my discovery in her medical records of approximately 28 Hartford Hospital emergency room visits, mostly for hypoglycemia, since January 1992, she denied most of them, accessing numerous physicians of negligent care. When I attempted to contact her outpatient treating physician, her place of employment, and her insurance, I rapidly found out that all were fictitious. . I believe the patient suffers from a Factitious Disorder involving self injection of insulin[2]. In addition she has a primitive personality disorder with impulsive, immature, and erratic behavior and seriously impaired interpersonal relatedness and judgement. Based on my evaluation last August, I feel her baby would be in danger in her care." March 16, 1995.
An Order of Temporary Custody was granted on March 27, 1995. The child was committed to the Department of Children and Families (DCF) as a neglected child on May 29, 1995. (Lavine, J.)
It would serve no useful purpose and it would be cruel to expose the numerous episodes of hospitalization that Carmen has CT Page 13812 had since Karen was born. They are itemized in Exhibit # 5 and Exhibit # 4. Her psychiatric condition is set forth in Exhibits # 9a and 9b. Dr. Sadler concluded that [Carmen] lies and distorts facts. She has had psychotic episodes. She has inflicted harm upon herself, when pregnant she becomes particularly aggressive to her fetuses, and continuously abuses insulin." This evaluator has strong suspicions that Ms. R. was the perpetrator who cut her own abdomen with a razor."
Carmen has been resistant to any treatment, but even if she were not, there is no known treatment program that has been shown to be effective for people who inflict self injury and who seek inappropriate medical treatment, according to Dr. Sadler. In his opinion a child would not be safe in Carmen's care. "The prognosis for Ms. R.'s treatment is exceedingly guarded."
Carmen has had opportunities for psychiatric treatment through her many hospital admissions including Cedar Crest Psychiatric Hospital, Hartford Hospital, Manchester Memorial Hospital, St. Raphael's Hospital, Hahnemann Hospital Psychiatric ward, Medical Center of Central Massachusetts, Meriden Hospital, Harrington Hospital, Worcester General Hospital, the day treatment program at the Institute of Living and UMASS and UCONN medical centers. She has had services offered through the Village for Families and Children and the Institute for Hispanic Families where she is presently in counseling. The court concludes that Carmen's medical and mental progress has been virtually non existent since Karen's birth.
ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds by clear and convincing evidence that this child was previously found to be have been neglected on May 29, 1995. The court finds the mother, Carmen M.R., has failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, that she could assume a responsible position in the life of this child. General Statutes § 17a-112 (c)(3)(B). The court finds that this ground has existed for more than one year.
With respect to the child's male biological parent Errol L., he has shown no interest in the welfare of Karen. He has not acknowledged paternity, paid child support or contacted the CT Page 13813 child's caretakers. The child has been abandoned by Errol in the sense that this parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of he child. G.S. 17a-112 (C) (3)(A). This ground has existed for more than one year.
MANDATORY FINDINGS:
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e):
1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and psychiatric services were offered, visitation was offered and foster care was provided by DCF. (See Exhibit #5).
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents have had enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the child was offered psychiatric services and multiple hospitalizations to no apparent benefit. The agency provided supervised visitation and transportation services for two years. The mother's failure to achieve any awareness of her own problems prevent her from being considered for possible future care. Services could not have been provided to the father who has avoided all contact with both the child and DCF.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill nor comply with the expectations, nor cooperate with DCF, as more fully set forth in the social study. She did complete a parenting program at the Village for Children and Families. She did not follow through on any of the desperately needed psychiatric treatment.
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the child does have a relationship with her mother and may even have a modest affectionate relationship with her, although the evidence in this regard is not consistent. It is clear however that the child is bonded to the foster parents and will hardly miss the irregular visits that she has had with Carmen. CT Page 13814
5) As to the age of the child. The child is nearly two years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence. . ." In re Alexander v.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD (1979).
6) The efforts the parents have made to adjust their circumstances or conditions. The court finds that the mother has been unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. Father has done nothing to facilitate reunification.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. Visitation and transportation have been provided to Carmen.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in Karen R.'s best interest for a termination of parental rights to enter with respect to the mother Carmen R. and the male biological parent Errol L. and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for the child for the purpose of securing an adoptive family. The commissioner shall file with this court no later than ninety days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law.
Francis J. Foley, Presiding Judge Child Protection Session