MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Maria G. and Lester C., who are the biological parents of the minor child Daniella, who was born on December 10, 1995. She is presently 2 years and 1 month of age. Daniella has lived for the past two years with the same foster parents who assumed her care immediately after her birth. The foster parents are strongly committed to her and wish to adopt her if the parents' rights are terminated. The child, by all accounts, has achieved normal developmental milestones, is relatively happy, well-adjusted and bonded, and views her foster parents as her natural parents.
The male biological parent of Daniella does not object to the termination of his parental rights. He has taken no interest in the child's life. He was offered the opportunity to have visitation with the child and was told that if he did not invest himself in the child's life that his parental rights would be terminated. On the morning of the trial for the termination of his parental rights the social worker advised him of the hearing, but he chose to go to work and not attend the trial.
The court finds that the mother has appeared during the pendency of the case, but on the date set for the termination trial, she came to court, talked briefly with her lawyer and then disappeared. The social worker and her court appointed attorney searched for her without success. The court delayed the proceedings for more than an hour to permit the search for her.
The parents have been served; they have actual notice of the pendency of the proceedings. The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court and reasonable efforts have been made to reunify this family.
The court having read the verified petitions, the social studies, the various documents entered into evidence and having heard the testimony of the case worker, makes the following findings by clear and convincing evidence.
The child was born on December 10, 1995. The parents were CT Page 1156 unmarried and lived with each other in a completely dysfunctional setting which included physical and verbal abuse. Mother reported father had a drinking problem. Mother has substance abuse problems which are ongoing. She is only able to maintain sobriety in structured residential programs. She does not participate in follow-up programs and quickly relapses.
Daniella came within the protective scrutiny of the Department of Children and Families (DCF) when the hospital notified DCF that the child was born cocaine positive. Maria had not attended prenatal visits, had abused alcohol and cocaine, and had not made adequate arrangements to care for an infant. DCF invoked a 96 hour hold. The child has never been in the exclusive care of Maria.
Daniella's female biological parent, Maria, came from very sad and tragic circumstances. She was an only child of a Polish mother and unknown father, born in Poland. Her citizenship in the U.S. is of doubtful legal status. Her lack of knowledge of the English language posed problems for her in school when she entered school. She had few friends. Her mother was very strict and used physical discipline upon her. At age eighteen she married a man named Frank G. She quickly became pregnant with a child. Due to Maria's substance abuse problems and the profound neglect of the child, her first child was placed in the custody of the child's father.
On March 20, 1996, the child Daniella, was adjudicated to be an uncared for child with specialized needs. On April 10, 1996, the child was committed to DCF and expectations were prepared and signed by the mother (Exhibit # 5). the social studies (Exhibits 1 and 2) narrate in great detail the history of personal failures of Maria to rehabilitate herself. She visited the child only when she was in a treatment facility; as soon as she was released she stopped visiting. Exhibit 3 narrates and itemizes the course of visits between Daniella and her mother. Other reports detail the variety of services which were offered to her individually and as a parent, to no apparent benefit. (Exhibit # 4). She was last in treatment at the Rushford Center for substance abuse treatment. Maria relapsed after the residential treatment ended; she was homeless; she had no employment. She is still homeless since leaving the Rushford Center last July. She has no plan for the child; she remains unemployed. She has admitted to drinking with her boy friend on Christmas Day, 1997. She is no further along to rehabilitation as a person or as a parent, than she was at the CT Page 1157 time of the child's commitment
ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds by clear and convincing evidence that this child was previously found to be have been uncared for on March 20, 1996. The court further finds that the parents have failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of this child. General Statutes § 17a-112(c)(3)(B).
The court further finds that this child has been abandoned by the parents in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. G.S. 17a-112(c)(3)(A);
The court finds that these grounds have existed for more than one year.
Mandatory Findings:
With respect to the mandatory factual findings required by General Statutes § 17a-112(e):
1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and psychiatric services were offered, visitation was offered and foster care was provided by DCF. (See Exhibit # 4).
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents have had enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the child was offered services but has failed to rehabilitate. Father did not participate in services nor express any interest in the child
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the expectations, described more fully in the social study. CT Page 1158
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the child is bonded to her present foster family, considers herself part of the family and that no presently existing emotional bonds will be broken by termination of the parents' rights.
5) As to the age of the child. The child is two years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In reJuvenile Appeal (84-CD), 189 Conn. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . . " In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
6) The efforts the parents have made to adjust their circumstances or conditions. The court finds that the mother has been unsuccessful in her rehabilitative efforts. She has attempted rehabilitation but her relapses are consistent and predictable. (A) Mother has maintained contact with the child only while in treatment (B) As far as is known, neither parent has had any communications with the guardian.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. There was no unreasonable conduct noted by DCF.
DISPOSITION
The court finds, based upon the testimony and evidence presented, that it would be in the child's best interest to terminate the parent's rights at this time. This finding is made after considering the child's sense of time, her need for a secure and permanent environment, the relationship that the child has with her foster parents, and the totality of circumstances.In re Juvenile Appeal (Anonymous), supra, 177 Conn. at 667-68. See generally, J. Goldstein, A. Freud A. Solnit, Beyond the BestInterests of the Child 99 (1979).
Based upon the foregoing findings, the court determines that it is in the Daniella's best interest for a termination of parental rights to enter with respect to the mother Maria G. and CT Page 1159 the male biological parent Lester C. and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for this child for the purpose of securing am adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law.
Francis J. Foley, Presiding Judge Child Protection Session