Memorandum of Decision
This case presents petition for the termination of the parental rights of Melanie B. and Richard L., who are the biological parents of the minor children, Brandon, Bradley, and Dylan. The minor children are twins, age four, and Dylan, presently 2 1/2 years of age.
The male biological parent of the children does not object to the termination of his parental rights. A Consent to Terminate Parental Rights was filed by Richard L. on the third day of the trial. His consent was found to be voluntarily and knowingly made with the advice and assistance of competent legal counsel and with a full understanding of the consequences of his consent.
The court finds that the mother has appeared and has a court appointed attorney. The father has been served, and had counsel appointed. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court and the court finds by clear and convincing evidence that reasonable efforts have been made to reunify this family. CT Page 13237
The court, having read the verified petitions, the social studies, the various documents entered into evidence, and having heard the testimony of various case workers and other witnesses, makes the following findings by clear and convincing evidence.
Richard, the children's father, came from a dysfunctional family, was abandoned by his mother at age 8, beaten by his father, dropped out of school in the ninth grade, began drinking alcohol at age 15 and was first arrested for criminal conduct at age 16. He has mental health issues, domestic violence issues and is, by all indications, an unrecovered alcoholic. He collects social security disability payments and has had no meaningful contact with the children in two years.
Melanie, the children's mother, is one of nine children of a dysfunctional family. She reports an unhappy childhood of an alcoholic father and a troubled mother. Melanie has reported that all of her brothers and sisters have substance abuse problems. She describes being closer to her father, estranged from her mother and out of the family home by age fourteen. She reports her first use of alcohol at that age and the onset of alcohol dependence by age sixteen. She left school in the ninth grade, she completed her Graduate Equivalency Diploma and reports having completed one year of a business school.
It does not appear that Melanie and Richard ever married. They met in 1992 and on June 20, 1993, Melissa gave birth to Brandon and Bradley. When the children were one year old, DCF removed the children from her care after an incident involving alcohol and domestic violence between Richard and Melissa. Melissa announced that she was committed to treatment at a local hospital and social services agency. Two months later, the children were returned to her under an order of Protective Supervision. She was pregnant and appeared to be free of alcohol.
On March 9, 1995, Dylan was born. Melanie has reported that she did not use alcohol during her pregnancies. Within three weeks after Dylan's birth, Melanie was impaired by alcohol. On March 31, 1995, the police were called to the family home. Both parents were found in the basement of the apartment house intoxicated. The twins, less than two years old, and the three week old infant were in the apartment alone. The children were in heavily soiled diapers, were dirty and the children's mattress smelled of urine and vomit. Both parents were arrested. An order of temporary custody was obtained and the children were placed in foster care. They have been in foster care since that time. The children were adjudicated as neglected on September 22, 1995 (Potter, J.). The petition to terminate the parental rights of the parents was CT Page 13238 filed on July 15, 1996.
The court must first determine whether grounds exist for the termination of parental rights as of the date of the petition or the latest amendment. Initially this petition was brought on the sole ground that the children have previously been adjudicated neglected and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parents could assume a responsible position in the life of the children. General Statutes 17a-112 (c) (3) (B). Under any careful analysis of the facts, this was the only appropriate ground upon which to proceed. The petition was amended on April 23, 1997 to add two additional grounds, abandonment and no-ongoing parent-child relationship. During the course of the trial on December 16, 1997, the petitioner, by agreement, amended the pleadings to delete the two new grounds for which the proof was lacking, for example, there was no evidence presented that the respondent mother ever lost interest or concern for her children. This amendment left only the original ground which was properly pleaded on July 15, 1996. The court will use that date as the adjudicatory date.
There is no need to itemize and chronicle the sad history of mother's attempts to free herself from the grip of alcoholism. Petitioner's exhibit #1, the social study for termination of parental rights, documents the history of the many programs which Melanie entered and failed. Neither Melanie nor her lawyer attempted to refute the social history as presented. It is clear from the record that from inception of her alcohol dependence at age 16 until June 3rd, 1997, when she was 33 years old, that Melanie was an unrecovered, active alcoholic.
So it is also clear that whether the adjudicatory date is July, 1996 or April, 1997, Melanie had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children, she could assume a responsible position in the life of the children, as of that date. The various documents in evidence clearly establish her inability to maintain sobriety outside of a structured counseling setting. Indeed, the testimony of the respondent-mother was limited by her attorney to events occurring after June 3, 1997, her date of most recent sobriety.
Adjudication
CT Page 13239
The court finds by clear and convincing evidence, upon a consideration of all the testimony and a review of all the evidence, that Melanie, as of the date of the petition, was an unrecovered, active alcoholic, impaired to such an extent that she was unable to provide for the care and custody of her children. The petitioner has satisfied the court that the children have previously been adjudicated neglected on September 22, 1995, and the mother, Melanie B., has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children, she could assume a responsible position in the life of the children. General Statutes 17a-112(c) (3) (B).
Disposition
The principal issue raised by this case is not whether or not grounds have existed for the termination of Melanie's parental rights, but rather, as of the date of disposition, the close of the hearing on December 18, 1997 ( Practice Book § 1043.1), what is in the best interest of the children. "Our statutes and case law make it crystal clear that the determination of the child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence." In re Valerie D.,223 Conn. 492, 511, 613 A.2d 478 (1992).
Melanie has had many different treatment programs through the years. The inevitable outcome of each program, failed or completed, has been a return to drinking. On November 17, 1995, Melanie left a treatment program at the Stonington Institute. While there, she had met a man who subsequently came to live with her. This man had a very dysfunctional history and Melanie recognizes her catastrophically bad judgment in taking him into her home. On Christmas Eve, 1995, she and this man began a drinking jag which continued for three days. On December 27, 1995, this man was in a rage and shot Melanie in the face and then shot and killed himself. They were both legally intoxicated. Melanie is now being treated for her alcoholism and for Post Traumatic Stress syndrome as a result of this "incident."
The mother's position at trial was that as of June 3, 1997, she entered a treatment program at Eastman House in Rhode Island and that she has had a "spiritual awakening" which, hopefully, will keep her sober. "I believe I'm in early recovery and have been for five and a half months," according to her concluding testimony. CT Page 13240
Melanie entered Eastman House after a "relapse" to alcohol shortly after leaving ROAD Counseling Program in Woonsocket, Rhode Island. Her reports from the ROAD program were glowing. "[Melanie] has energetically participated in her treatment sessions. She appropriately addresses relevant issues in the group forum such as her history of alcohol abuse and current recovery issues. [Melanie] demonstrates a high level of insight around her history of difficulties with alcohol abuse and related decision making. [Melanie] possesses a repertoire of healthy coping mechanisms. She appears to utilize these coping mechanisms on a regular basis in support of her recovery goals. In addition she is well versed with the self-help philosophy (AA/NA resources), and sees to be appropriately utilizing these resources according to her self reports . . . In sum [Melanie] is doing an exemplary job. . . ." (Respondent's Exhibit C, Feb. 1997). She completed the program and relapsed in May 1997.
Melanie has had good reports from other institutions as well. She has been in counseling programs, substance abuse programs, institutions, out patient programs, and residential programs too numerous to mention. She is convinced, however, that this time her recovery is real. She was in Eastman House from June 3, 1997 to September 8, 1997. She then entered the Women's Day Treatment Program in Providence, R.I. She successfully completed this program on November 14, 1997. She appeared to have achieved her goal of abstinence while in the day treatment program.
Melanie is now in an outpatient program where she is expected to attend three AA meetings per week, have daily contact with her sponsor and attend out patient counseling once per week. (Respondent's Exhibit D). Melanie states that her recovery is a life long commitment. She believes she's come a long way.
This court is hopeful that she will stay with her commitment to recovery. Her recovery is, however, fragile. Authorities on alcoholism report that relapse is a part of recovery. It has not been demonstrated by Melanie that as of December 18, 1997, her rehabilitation has been successful over time. Her judgment has not substantially improved in other areas. Upon her discharge from Eastman House she took up residence this fall again with the children's father, Richard, a person who does not promote confidence in her recovery or in her remaining free of domestic violence. A newly abstinate individual needs intensive support and encouragement. Her risk of relapse is high. CT Page 13241
Her need to remain abstinate, to deal with such problems as her basic needs and personal counseling, were made very clear to Melanie by the social workers. The consequences of noncompliance were very well known to Melanie. In these children's lives, Melanie has not been able to function as a consistent and competent parent. Whether she can in the near future is uncertain. She presents a risk to which the children should not be exposed.
At this stage of the proceedings the children's needs and interests are to be considered. Dylan has been in foster care since three weeks of age. He is bonded and attached to his foster family. It would be cruel and unjust to remove him from such a setting and place him with a woman he does not know and whose future is guarded at best.
The older children, the twins, Brandon and Bradley, had self injurious behaviors, and were developmentally delayed, when they entered foster care. Melanie's parenting had been very unacceptable. The children's needs exceed the ability of Melanie to parent at this time. The twins current foster parents, totally accept them as part of the family. The foster mother is described as being in tune to their special needs, their low frustration levels and low attention spans. The children can be self-injurious; she will drop everything to meet their specific needs; they are thriving on the nurturing that she has been able to give them.
Dr. Nancy Randall, the court appointed psychologist, indicated, in summary, that Melanie's stress tolerance was low, that she did not have a significant relationship with the children and her treatment needs are long term. Melanie's prognosis for full recovery was low; her risk for relapse was high.
The court is satisfied that grounds exist for termination of the mother' s parental rights. The father has consented to the termination of his rights. The children's best interest would be best served by adoption by the present care-givers.
Mandatory Findings
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e), they do not apply to the consenting father.
1) The timeliness, nature and extent of services offered. One social worker testified to approximately fifteen substance abuse programs offered CT Page 13242 to Melanie. The court finds that parental, psychological and substance abuse services were offered, visitation was offered and foster care was provided by DCF.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents had more than enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the children was offered services on a very extended basis. The evidence supports a finding by clear and convincing evidence that services were offered to address Melanie's alcohol, domestic violence and mental health counseling needs, which had to be addressed before reunification was possible.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the expectations, described more fully in the social study.
4) The feelings and emotional ties of the children with respect to the parents and foster parents, etc. The court finds that the children are bonded to their present foster families; they consider themselves to be part of the families and that no presently existing emotional bonds will be broken by termination of the parents rights.
5) As to the age of the children, the twins are four years of age. Dylan is 2 1/2 years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Corp. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence..." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD (1979).
6) The efforts the parent has made to adjust their circumstances or conditions. The court finds that the mother has made efforts to adjust her circumstances, conduct or condition to facilitate reunification. Virtually all her efforts have been unsuccessful in the past. Regrettably, the continuing success of her efforts at recovery cannot be accurately predicted. The father has consented to the termination of his nights.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. CT Page 13243 There was no unreasonable conduct noted by DCF. The children's recent reaction to the visitation robustly indicated that continued visitation is not appropriate.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in the children's best interest for a termination of parental rights to enter with respect to the mother, Melanie B., and the male biological parent, Richard L., and accordingly a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for these children for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
Francis J. Foley, Presiding Judge Child Protection Session