MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Barbara B., who is the biological parent of the minor children, Anna and Philip, twins, who were born on June 30, 1989. The minor children are presently eight years of age. They have lived in their present foster home since March 11, 1993.
The male biological parent of Anna and Philip does not object to the termination of his parental rights, and his rights were terminated by consent on July 14, 1997 (Dyer, J.). His consent was found to be voluntarily and knowingly made with the advice and assistance of competent legal counsel, and with a full understanding of the consequences of his consent. It should be noted that the male biological parent is not the person who was first nominated as the father when this proceeding began, namely Barbara's husband of more than twenty years, but rather, her husband's nephew. This development only came to light during these child protection proceedings. At the commencement of the proceedings Barbara B., age 45, and her husband Franklin B. Sr., age 57, were believed to be the parents of the twins. They are the parents of the older two children. It was established at an evidentiary hearing on April 11, 1997, at the Child Protection Session, that one Randy S., age 27, the nephew of Franklin B. Sr., and who is presently incarcerated, was, likely, the biological parent of the twins. Genetic tests have confirmed his paternity. He has never had any parental contact with the twins. The twins have always considered Franklin B. Sr. to be their father.
The court finds that the mother has appeared and has a court CT Page 9854 appointed attorney. The male biological parent has been served, had counsel appointed, and was not required to attend the contested hearing following the acceptance of his consent. The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court, and reasonable efforts have been made to reunify this family.
FACTS:
The court having read the verified petitions, the social studies, the various documents entered into evidence and having heard the testimony of case workers and witnesses for the respondent, makes the following findings by clear and convincing evidence.
Anna and Philip have two half-brothers. When the action was initiated, the studies all indicated that all the children were full siblings. All children assumed that they had a common mother and father. The twins oldest half-brother Franklin B. Jr. is now 22 years of age. He is mentally retarded and has a documented history of multiple instances of sexually inappropriate behavior with children outside the family, which has resulted in his arrest and a referral to a program for mentally retarded sex offenders in 1992. He was adjudicated not competent to stand trial for an alleged sexual offense as a juvenile, negative, impulsive, aggressive behavior has resulted in out of home placements beginning in 1986, at Newington Children's Hospital, an admission to Elmcrest Psychiatric Hospital in 1989, and residential placement at Mount St. Johns from September, 1990, to July, 1992.
In February, 1993, Anna, age three and a half, disclosed to various responsible adults, including a social worker at Yale Sexual Abuse Clinic, that her brother Franklin B. Jr., aged seventeen and a half, had been sexually abusing her. Further information disclosed that her twin brother Philip had been genitally fondled by Franklin, and, that the half-brother Arthur, then aged sixteen, had participated in the sexually inappropriate behavior with the twins,[2] Notwithstanding the impressive prior history of Franklin as a sexual exploiter of children, Anna's mother did not believe Anna and did nothing to protect her from further abuse! In a tale of sorrow that is heard by this court too often, Anna was victimized by a male family member, victimized by her own mother's disbelief, and victimized by a removal from her family; a move compelled by her mother's failure CT Page 9855 to protect her. More than four years later, her mother remains in denial, has been unimproved by therapy, and has profound unresolved parenting limitations.
Anna and Philip's female biological parent, Barbara B., came from sad and tragic circumstances. According to Barbara, as a young child, her own mother abandoned her, and her grandparents and father raised her and her two brothers. She reports to dropping out of school after the eighth grade. In her psychological examination (petitioner's Exhibit #21), Dr. David M. Mantell reported her to be sloppy, an inattentive worker, with low frustration tolerance, who would give up easily. An actuarial analysis of Barbara's responses to the MMPI-2 showed a "significant validity problem." She obtained a borderline performance on her Mental Status Examination. She showed a strong and emphatic emotional response to a question about her parent's divorce, yet, "[S]he told me her childhood was fine and her reactions to other content questions were similarly superficial." Although Barbara denied any sexual abuse in her own background, she also reported that none of her children had been sexually abused and none are mentally retarded or emotionally disturbed.
Immediately after the children reported the abuse in 1993, DCF was willing to consider the return of the twins provided that Franklin was removed from the home. The mother's Exhibit "D" clearly establishes that for nearly a year, the DCF plan was to return the children to the "parents" under an order of Protective Supervision, provided that Franklin was removed from the home. This did not occur because Franklin was not removed from the home. The parents were waiting for the Department of Mental Retardation to find a placement for Franklin. The respondent's made no other efforts to place Franklin, then nearly aged eighteen, themselves so that they could be reunited with the four year old twins, this despite the fact that, according to a witness for the mother, Franklin was ". . . able to care for himself." As between promptly relocating Franklin, even temporarily while waiting for a DMR placement, and leaving the twins in foster care, the "parents" elected to leave the twins in foster care.
During this first year of placement, the children began to fear their mother's outbursts at visitation periods. Notes of the mother's inappropriate conduct began almost immediately after the children were removed. The psychological evaluation confirmed the children's fear of their mother. CT Page 9856
Whatever happened to Philip in the care of his "parents" has profoundly disturbed this child. "The foster parents note that he behaves impulsively with bizarre behaviors that increasingly set him apart from other children." (Exhibit 21, p. 11) The foster mother reports that the child's conduct is over-sexualized to a significant degree and she is concerned that he will become increasingly sexually explicit toward other children. A psychological test administered by Dr. Mantell confirms a significantly developmentally delayed child with substantial emotional and behavioral problems. He continues to be in weekly therapy for his thought disorder, and is being monitored by his therapist and an attending psychiatrist. Philip does not wish to see his parents again and views his foster parents as the persons most like a mom and dad.
Anna tested as a normal child in all areas except social skills. She appeared to Dr. Mantell as an attractive child, well groomed, composed and clear of speech and much more confident than her brother. She was precise and emphatic in her assertions about the events that led her into foster care. She is extremely angry at her parents for failing to believe her and failing to protect her. She does not wish to see, visit, or return to them. She is bonded to her foster parents and wishes to live with them "for a long time, and I'm going to live with them forever." (Exhibit # 21, p. 12)
In addition to the problems surrounding the sexual episodes, the social studies reflect an extensive history of neglect and poor parenting dating back to 1981. DCF has offered many individual and family services both in the home and subsequent to removal. The social history is replete with references to the mother's poor personal hygiene, and, more importantly, her volatile and inappropriate behavior. It is established, from the mother's witnesses and documentary evidence, that she did provide appropriate medical care for the children when they were in her care and handled her children appropriately during taxi rides provided by the state contracted taxi driver. She has, however, not benefited by the therapy and social services offered and has failed to rehabilitate herself to a useful and appropriate role as a parent. Dr Mantell testified that, given the poor conditions of the home, the poor parenting skills, mother's intellectual limitations and personality disorder, the family was, at best, marginal, before the sexual issues and "she still refuses to acknowledge this problem." CT Page 9857
ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds by clear and convincing evidence that these children were previously found to have been neglected on April 5, 1991 (Goldstein, J.). The court further finds the mother has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the life of these children, General Statutes § 17a-112(c)(3)(B) and, further, that the children have been denied, by reason of an act of commission or omission, the care, guidance or control necessary for their physical, educational or emotional well-being, i.e., the mother has failed to protect her children from sexual abuse. General Statutes Sec. 17a-112 (c)(3)(C) The court finds that these grounds have existed for more than one year. The father has consented to the termination of his parental rights and this consent has been accepted by the court.
With respect to the allegation that no on-going parent child relationship exists, the court has dismissed this ground on motion of the respondent's counsel at the conclusion of the petitioner's case.
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e), they do not apply to the consenting father.
1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and psychiatric services were offered, visitation was offered, and foster care was provided by DCF. The services offered were adequate, available, accessible and relevant. See Petitioner's Exhibit # 23.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents had more than enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The mother of the children and her husband, who was believed to be the father, were offered services. Mr. B. Sr. did not choose to accept any counseling, seeing no need for them. Neither parent utilized the offered therapy nor did they think the children needed to be protected. The parents do not recognize CT Page 9858 the children's needs. It is not clear that, even to this day, the mother recognizes her need for therapy or acknowledges that sexually inappropriate conduct was occurring to her infant twins.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fully comply with the expectations, described more fully in the social studies. She appeared more interested in blaming DCF for removing the children than resolving her multitude of personal troubles.
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that the children are bonded to their present foster family, consider themselves part of the family, and that no presently existing emotional bonds will be broken by termination of the parents rights.
5) As to the age of the child. The children are eight years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
6) The efforts the parents have made to adjust their circumstances or conditions. The court finds that the mother has been unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. The father has consented to the termination of his rights.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the children except the mother's volatile, aggressive and inappropriate behavior during visitation. There was no unreasonable conduct noted on the part of DCF. The children's reaction to the visitation robustly indicated that continued visitation was not appropriate. The mother has not seen her children in nearly two years. The children do not wish to see CT Page 9859 her.
Based upon the foregoing findings, the court determines that it is in Anna and Philip's best interest for a termination of parental rights to enter with respect to the mother Barbara B. and the male biological parent, Randy S. and accordingly a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for these children for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law.
Francis J. Foley, Presiding Judge Child Protection Session