Memorandum of Decision
This case presents a petition for the termination of the parental rights of Dawn D. and Rigoberto G., who are the biological parents of the minor children Kristina and Daniel. The CT Page 803 petition also seeks the termination of parental rights for Dawn D. and Stephen W., as they are the parents of Kasandra W. The children were born on the following dates; Kristina, March 8, 1987, she is ten years ten months of age; Daniel, March 28, 1990, he is seven years ten months of age; and Kasandra was born on April 29, 1992, she is five years and nine months of age. These children have been in foster care with the same foster parents since they were removed from Dawn on June 8, 1994.
The male biological parents of these children do not object to the termination of their parental rights. Consents to Terminate Parental Rights were filed by Rigoberto G. and by Stephen W. Their consents were found to be voluntarily and knowingly made with the advice and assistance of competent legal counsel and with a full understanding of the consequences of their consent. Their consents are accepted by the court.
The court finds that the mother has appeared and has a court appointed attorney. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court and the court finds by clear and convincing evidence that reasonable efforts have been made to reunify this family.
The court heard testimony over three days beginning January 13, 1998. Having read the verified petitions, the social studies, the various documents entered into evidence, and having heard the testimony of case workers and other witnesses, the Court makes the following findings by clear and convincing evidence.
The father of the youngest child, Kasandra, is presently in prison for having sexually abused Kristina and Daniel. He is prohibited from contact with any child under the age of 16. The natural father of Kristina and Daniel has never had a role in the lives of the children nor has he acted in a responsible way physically, financially or emotionally toward those children. The children do not have any positive bonds with either person. It is, as will be developed later, clearly in the best interest of the children to terminate the legal relationship that presently exists, and accordingly the consents to terminate are accepted by the court and the parental rights of both Rigoberto G. and Stephen W. shall be terminated.
Dawn, the children's mother, has a long standing dual diagnosis as suffering depression, borderline personality CT Page 804 disorder and poly substance abuse. She is a convicted felon, having had an arrest and conviction in January, 1991, for possession of narcotics for which she received an eighteen month suspended sentence with three years probation. She has had subsequent arrests and convictions. At the time the children were removed from her care in June 1994, Dawn was an active substance abuser who was living in an abusive relationship with Stephen W., who was a self-described "drunk". In response to an "at-risk" complaint on June 8, 1994, the police found the children unsupervised, without care and their mother and Stephen were found at their apartment asleep and intoxicated. An order of temporary custody was obtained and the children were placed in foster care. They have been in foster care since that time.
The children were adjudicated as neglected on March 29, 1995 (Brenneman, J.). The petition to terminate the parental rights of the parents was filed on February 26, 1997.
The court must first determine whether grounds exist for the termination of the mother's parental rights as of the date of the petition or the latest amendment. Initially this petition included the ground that the children have previously been adjudicated neglected and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, such parents could assume a responsible position in the life of the children. General Statutes § 17a-112
(c)(3)(B). Other grounds have subsequently been withdrawn. Under any careful analysis of the facts, this was the only appropriate ground upon which to proceed. The court will use the petition date, February 26, 1997, as the adjudicatory date.
There is no need to itemize and chronicle the sad history of mother's attempts to free herself from the grip of substance abuse. Petitioner's exhibit #2, the social study for termination of parental rights, documents the history of the many programs which Dawn entered. Some programs she completed and others she failed to complete. It is inappropriate to call any of the programs successful as she relapsed after every program. It is clear from the record that from inception of her alcohol dependence until October, 1997, when Dawn was 32 years old, that Dawn was an unrecovered, active substance abuser. In her testimony presented to the court on January 14, 1998, she stated that she was marking ninety days of sobriety. CT Page 805
So it is also clear that on the adjudicatory date of February 26, 1997 Dawn had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children, she could assume a responsible position in the life of the children, as of that date. The various documents in evidence clearly establish her inability to maintain sobriety outside of a structured counseling setting. Indeed, the testimony of the respondent-mother was that, even after the petition had been brought, she unsuccessfully completed the Valley Mental Health Center program in May, 1997, the Bridgeport Rescue Mission Program and the Waterbury based, Help Inc. substance abuse programs in the late summer and early fall, 1997. Indeed, a police officer testified that in September of 1997, more than three years after the children had been in foster care and six months after this petition had been brought, Dawn was arrested for walking in the roadway while intoxicated and interfering with a police officer. While at the police station the attempted to hang herself and was hospitalized at Griffin Hospital. At that same hospital she had previously been admitted for an overdose of cocaine and benzodiazeine.
Adjudication
The court finds by clear and convincing evidence, upon a consideration of all the testimony and a review of all the evidence, that Dawn D., as of the date of the petition was an unrecovered, active alcoholic and substance abuser, impaired to such an extent that she WAC unable to provide for the care and custody of her children. The petitioner has satisfied the court that the children have previously been adjudicated neglected on March 29, 1995, and the mother, Dawn D. had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children, she could assume a responsible position in the life of the children. General Statutes 17a-112 (c)(3)(B).
Disposition
The principal issue raised by this case is not whether or not grounds have existed for the termination of Dawn's parental rights, but rather, as of the date of disposition, the close of the hearing on January 15, 1998 (Practice Book § 1043.1), what is in the best interest of the children. "Our statutes and case law make it crystal clear that the determination of the CT Page 806 child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence." In re Valerie D.,223 Conn. 492, 511, 613 A.2d 478 (1992).
Dawn has had many different treatment programs through the years. The inevitable outcome of each program, failed or completed, has been a return to drinking or use of cocaine. She wants the court to believe that her present program is different than all the prior programs and that now she is in recovery. Further, she wants the court to allow the children to remain in a continued state of legal uncertainty over the next year or two while she continues her recovery.
Dawn entered Connecticut Valley Hospital "CVH" on October 31, 1997, after her discharge from Griffin Hospital. She reports to having been sober for two weeks prior to entering CVH. The CVH program is a forty-five day in-patient program. She was eligible for discharge in mid-December, but has stayed on in the program because the Christmas holidays presented a threat to her sobriety and because this trial was set to commence on January 13, 1998. She and her counselor thought it best for her to remain in a structured environment.
Dawn's counselor at CVH testified that to his knowledge Dawn has been sober and has successfully completed the CVH program. The counselor said Dawn will have to enter a half-way house for six months to a year and then continue out-patient therapy for another year. He is presently making arrangements for Dawn to enter a half-way house in northwest Connecticut. Dawn has been in CVH continuously since October 31, 1997, except for a ten hour pass during the Christmas holidays.
Dawn has had good reports from other institutions as well. She has been in counseling programs, substance abuse programs, institutions, out-patient programs, and residential programs too numerous to mention. (See pages 11-13 of social study). Dawn is convinced, however, that this time her recovery is real. She appears to have achieved her goal of abstinence while in this highly structured, in-patient environment.
This court is hopeful that she will stay with her commitment to recovery. Her recovery is, however, fragile. Authorities on alcoholism report that relapse is a part of recovery. It has not been demonstrated by Dawn that as of the date of disposition, CT Page 807 January 15, 1998, that her rehabilitation has been successful over time. She has not been able to demonstrate in over three and a half years, that she has been able to remain sober outside of the structure of a program. Dawn, as a newly abstinent individual, needs intensive support and encouragement. Her risk of relapse is high. Her recovery is tentative. Dawn must devote her near-term future to meeting the demands of recovery. She would be unable to deal with the stress of three children with special needs.
Her need to remain abstinate, to deal with such problems as her basic needs and personal counseling, were made very clear to Dawn by the social workers and her counselors. The consequences of noncompliance were very well known to Dawn.(See Expectations exhibit #1). In these children's lifetimes, Dawn has not been able to function as a consistent and competent parent. Whether she can in the future is very uncertain. She presents a risk to which the children should not be exposed. As of this date, Dawn has been unable to successfully care for herself over the past three and a half years.
At this stage of the proceedings, the disposition phase, the children's needs and interests are to be considered. Kasandra has been in foster care since two years of age. She is now close to six. She is bonded and attached to her foster family. It would be cruel and unjust to remove her from such a setting and place her with a woman she barely knows and whose future is guarded at best.
The older children, Kristina and Daniel had emotional problems as a result of their past sexually abusive treatment and chaotic home environment when they entered foster care. Dawn's parenting had been unacceptable. The children's needs exceed the ability of Dawn to parent at this time, according to Dr Ruth Grant, the court appointed clinical psychologist. The children suffer from post traumatic stress disorder and have specialized needs that Dawn cannot meet. The children have depression, feelings of insecurity, and issues of bonding and trust. They need a consistent, structured and nurturing environment. They are getting this in the foster home. Dawn herself needs structure. She is enormously needy. She desperately loves the children but has been unable to translate that love into sobriety. She has spent most of the children's lives attempting merely to meet her own self-abusive needs. CT Page 808
An example of her own neediness and her inability to subordinate her own needs to those of the children is exemplified by her wish to have the children testify in this trial. The court denied her request upon consideration of the psychologist recommendations. Dawn argued that the children should be called as witnesses to testify regarding her visits with them and, she offered, to show that the children, especially Daniel, wanted to continue to visit her. Even if the children had testified in a most favorable manner regarding visitation, it would not have altered the unassailable facts that Dawn has failed to rehabilitate and that the children desperately need the security of placement offered only by adoption. Dawn had previously listened to the testimony of Dr. Grant, who testified that she did not conduct a parent-child interactional study of these children with Dawn, because the older children had so vigorously resisted such an encounter. She felt that it would be harmful to the children to compel them to be exposed to Dawn. Yet Dawn, clearly exalting her own needs to those of the children, wanted them to be called into court as witnesses.
The court concludes that Dawn is not now, nor within the reasonably foreseeable future, considering the age and needs of the children, in a position to resume a responsible role in the lives of the children. The foster mother is described as being in tune to their special needs, their low frustration levels and low attention spans. They are thriving on the nurturing that she has been able to give them. The children want to have personal certitude about their future. They refer to the foster parents as "Mom" and "Dad". Dawn is unable to deal with that.
The court is satisfied that grounds exist for termination of the mother's parental rights. The fathers have consented to the termination of their parental rights. The children's best interest would be best served by adoption by the present care-givers.
Mandatory Findings
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e), they do not apply to the consenting fathers:
1) The timeliness, nature and extent of services offered. One social worker testified to the many substance abuse programs offered to Dawn. The court finds that parental, psychological and CT Page 809 substance abuse services were offered, visitation was offered and foster care was provided by DCF.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The mother had more than enough time to demonstrate her desire and concern for reunification and to achieve rehabilitation. The mother of the children was offered a variety of services on a very extended basis. The evidence supports a finding by clear and convincing evidence that services were offered to address Dawn's poly-substance abuse problems, her domestic violence and mental health counseling needs which had to be addressed before reunification was possible.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the most important expectation, that she remain free of substance abuse. The importance of the expectations is to provide a map for the parent. Even if Dawn had fulfilled all the expectations, the test is whether she achieved the goals of those expectations, i.e. parental rehabilitation. Dawn did not.
4) The feelings and emotional ties of the children with respect to the parents and foster parents, etc. The court finds that the children are bonded to their present foster families, they consider themselves to be part of the families and that no presently existing emotional bonds will be broken by termination of the parent's rights.
5) As to the age of the children, they are ten, seven and five years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276
(1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence. . ." In re AlexanderV., 25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD (1979).
6) The efforts the parent has made to adjust her circumstances or conditions. The court finds that the mother has made efforts to adjust her circumstances, conduct or condition to CT Page 810 facilitate reunification. Virtually all her efforts have been unsuccessful in the past. Regrettably, the continuing success of her efforts at recovery cannot be accurately predicted. The fathers have consented to the termination of their rights.
7) The court finds that there has been nothing to prevent the parent from maintaining a meaningful relationship with the children. There was no unreasonable conduct noted by DCF.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in the children's best interest for a termination of parental rights to enter with respect to the mother, Dawn D. and the male biological parents, Rigoberto G., and Stephen W. Accordingly a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for these children for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
Francis J. Foley, Presiding Judge Child Protection Session