MEMORANDUM OF DECISION
This case presents a petition for the termination of the Parental rights of Sonia M.. the female biological parent of CT Page 6 three children, and also to terminate the parental rights of these children's male biological parents. Those male parents are Thomas G., the father of Abygail and Joshua; and Raymond G.. the acknowledged father of Carmen. A Consent to Terminate Parental Rights was filed by Carmen's male biological parent at the conclusion of the trial. Two of the biological parents, Sonia and Thomas have not signed consents and accordingly certain findings must be made with respect to those two individuals.
With respect to the consent which has been signed and presented to the court, the consent is found to have been voluntarily and knowingly executed with the advice and assistance of competent legal counsel and with a full understanding of the legal consequences of said parent's actions. The consent is accepted by the court.
The court finds that the both Sonia and Thomas have actually appeared in this case. Attorneys were appointed to represent their interests, and the attorneys used exceptional vigor in representing their clients during the pendency of this proceeding. Sonia has failed to appear for the termination of parental rights hearing. She had actual notice of the hearing, was represented by counsel and may be a fugitive from justice at this time. She was told by the social worker and by her attorney of the time and date of the hearing. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court and reasonable efforts have been made by DCF to reunify the children's primary caretaker, the mother, with this family.
Both male biological parents, through counsel, have raised the issue of whether DCF has made reasonable efforts to reunify the children with them as required by General Statutes §17a-112 (c).[2] While the statute does require the agency to both locate the parent and to reunify the child with the parent, the statute, in the same sentence, states ". . . unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . ." This court holds that this language does not require solely a unilateral effort by DCF. The parent must have some shared responsibility in the form of a genuine interest in parenting, that is a willingness to benefit from reunification services, together with and an availability to participate in those services. In this particular case neither male biological figure was actively interested in parenting, neither had ever been a principal caretaker of the children, neither presented a plan for the care of the children, CT Page 7 neither affirmatively sought reunification services and neither made himself available for the delivery of reunification efforts. The language of this section does not allow a parent to idly await DCF efforts to confer upon them the appointments, benefits and privileges of parenthood without any action on their part.
Raymond G., has made a determination himself that Carmen's best interests would be served by adoption and he has accordingly consented. Thomas G., who has not consented to the termination of his parental rights, has been incarcerated since Joshua was six months old. The children have no present knowledge of him. He will not be released from prison until September, 1999, and will likely be in a half-way house upon his earlier release. He will be devoting his early release to his own personal living arrangements, employment and vocational training. He will not be available to parent, even if he were inclined to that pursuit, until several years from this time. He is not interested in nor actively available for reunification efforts. He did not offer any testimony or evidence of any kind that he had a parent-child relationship at any time with these children. His incarceration has hardly been an obstacle for reunification efforts. His pre-incarceration lack of parenting is most persuasive of his interest in the children. The court finds by clear and convincing evidence that Thomas was emotionally and physically unavailable to DCF for the delivery of reunification efforts.
The court, having read the verified petitions, the social studies and the various documents entered into evidence, makes the following findings by clear and convincing evidence.
The court finds the following relevant facts. The children were born as follows: Carmen on July 27, 1987; she is nearly eleven years of age. Abygail was born on November 4, 1991; she is six years of age, and Joshua was born on December 5, 1992; he is five years of age. The children have been in foster care since February 22, 1994, nearly four full years. The parents of Abygail and Joshua, Thomas G. And Sonia M. have had a turbulent, dysfunctional relationship marked by aggressive substance abuse and domestic violence. The conduct of these two biological parents of the children may have permanently handicapped these children. In Robin Karr-Morse and Meredith Wiley's seminal work Ghosts from the Nursery, Tracing the Roots of Violence, The Atlantic Monthly Press, New York (1997), the authors compellingly demonstrate the poisonous effect that neglect, substance abuse, injury and toxicity have on children during the first CT Page 8 thirty-three months of life: nine months of gestation and two years of infancy. This is the exact same period that Thomas and Sonia cared for these children. The authors write: "[A]buse and neglect in the first years of life have a particularly pervasive impact. Prenatal development and the first two years are the time when the genetic, organic and neurochemical foundations for impulse control are being created. It is also the time when the capacities for rational thinking and sensitivity to other people are being rooted or not in a child's personality. . . . This overlooked chapter of early growth sees the building of the capacities for focused thinking and for empathy or the lack of these." P. 4.
Thomas testified he had a seventh grade education, quit school when he was thirteen years of age; had been in and out of institutions all his life, and had an addict for a mother. He admitted to assaulting Sonia during their "on again off again relationship" because he was under the influence of drugs. His present incarceration is the result of an assault on Sonia while he was doing heroin and cocaine. He had previously been incarcerated for two counts of armed robbery. In April of 1993, when Joshua was four months of age, Thomas relapsed onto cocaine and heroin. In June, 1993, he assaulted Sonia and was arrested. He has remained in since that time. He has had three visits with his two children arranged by DCF. while in prison. He has never had a nurturing parent-child relationship with the children. It is fortunate if the children do not recall anything about the dysfunctional. abusive life with Thomas. The social study reports the children have no memory of him. The court finds that there is no on-going parent child relationship between Thomas and these two children.
Sonia failed to appear for trial. Her attorney understands that there may be a warrant out for her arrest on a violation of probation. It would serve no useful purpose to recite the numerous problems that Sonia has had through the last four years. The problems are largely related to profound substance abuse and its classic sequela, self-abuse. Prostitution, larceny, and arrests. Her drug addiction habit has been reported at ten bags a day. (Petitioner's Exhibit # 5). Her whereabouts during the past four years has been largely unknown to DCF. She has been homeless for much of the time. She has failed to visit her children since June of 1995. She was found to have neglected her children as of February 8, 1995 (Keller, J.). CT Page 9
ADJUDICATION
The court finds by clear and convincing evidence. that Sonia M., the mother of the children, has abandoned the three children in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. G.S. 17a-112 (c) (3)(A). The court finds that this ground has existed for more than one year.
The court further finds that with respect to the mother, Sonia M., the children have previously been adjudicated neglected and the mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children, such parent could assume a responsible position in the lives of the children. General Statutes 17a-112(c)(3)(B).
With respect to the male biological parent, Thomas G.. the law is that: "It is reasonable to read the language of `no on-going parent-child relationship' to contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been displaced. In either case, the ultimate question is whether the child has no present memories or feelings for the parent." In re Juvenile Appeal(Anonymous), 177 Conn. 648, 670, 420 A.2d 875 (1979). See also Inre Juvenile Appeal (Anonymous), 181 Conn. 638, 646, 436 A.2d 290
(1980).
In the present case the court has found that no positive memories exist for the children with Thomas. Accordingly, the court finds that the father, Thomas, has no ongoing parent child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the children, Abygail and Joshua, and that to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of in the children; General Statutes Sec. 17a-112 (c)(3)(D) . This ground has existed for more than one year
The male biological parent, Raymond G., has consented to the termination of his parental rights and his consent has been accepted by the court. CT Page 10
MANDATORY FINDINGS
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e), they do not apply to the consenting male biological parent, Raymond G.: 1) The timeliness, nature and extent of services offered. The court finds that parental, psychological and substance abuse services were offered, visitation was offered, principally to the former primary caretaker, and foster care was provided by DCF for the children. (See Exhibits # 4 and # 6).
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The male biological parents, Raymond and Thomas, took no interest in the children and were not amenable to the delivery of services.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. This finding is not applicable to these disinterested male parents. See Exhibit # 3 as to Expectations set for mother, the most important of which, "No substance abuse", was flagrantly violated by the mother.
4) The feelings and emotional ties of the child with respect to the parents and foster parents, etc. The court finds that no presently existing positive emotional bonds will be broken by termination of the parents' rights.
5) As to the age of the child. The children are 10, 6 and 5 years of age. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD), 189 Conn. 276
(1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence.." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD (1979).See also, GHOSTS FROM THE NURSERY,
6) The efforts the parents have made to adjust their circumstances or conditions. The male biological parent, Thomas, took no interest in the children and did not actively seek any DCF services. He did, however, participate in services within the CT Page 11 prison which may ultimately work to his personal benefit. Those services are of no present benefit to these children who require present, continuing, nurturing care, stimulation, education and daily support. When Thomas may ultimately be able to provide such care is a matter of speculation and certainly not within a time frame to be useful to the children.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. There was no unreasonable conduct on the part of DCF noted. While Thomas' incarceration was a factor, .."[t]he restrictions on movement that 1 are inherent to incarceration, however, do not excuse a failure to make use of available, albeit limited, resources for communication with one's children." In reJuvenile Appeal (Docket No. 10155), supra In Re Shannon S.,41 Conn. Sup. 145, 153, 562 A.2d 79 (1989).
DISPOSITION
The court finds, based upon the testimony and evidence presented, that it would be in the children's best interest to terminate their parents' rights. This finding is made after considering the children's sense of time, their need for a secure and permanent environment, the relationship that the children have with their foster parents, and the totality of circumstances that the termination of parental rights is in the children's best interest. In re Juvenile Appeal (Anonymous), supra,177 Conn. at 667-68.
Based upon the foregoing findings, a termination of parental rights shall enter with respect to the mother, Sonia, and the male biological parents of each child, and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for these children for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law.
Francis J. Presiding Judge Child Protection Session. CT Page 12