MEMORANDUM OF DECISION
On July 30, 1998, the Department of Children and Families, hereafter "DCF", filed petitions for the termination of the parental rights of Elizabeth B. and George R. to their two children, George and William R. A trial on the petitions took place on April 13, 1999. For the reasons stated below, the court grants the petitions for termination of the parental rights of the respondent mother based on her consent and the parental rights of George R. on the grounds of abandonment, his failure to rehabilitate himself and for the lack of an ongoing parent-child relationship.
Elizabeth B. consented to the termination of her parental rights on April 13, 1999. The court accepted her consent, having found it to have been knowingly and voluntarily made with the advice and consent of competent counsel. The petitions were amended to reflect her consent.
From the evidence presented, the court finds the following facts:
 A. FACTS
Many of the claims made by DCF against George R., the father of the children, were admitted by him during his testimony at trial. He admitted he had been engaged in substance abuse since CT Page 5187 the time he was in high school and the drug he used was cocaine. He admitted that he and Elizabeth B. had problems with domestic violence, that he had physically abused her, at times in front of the children. He admitted that he stated he was interested in various programs for his own rehabilitation, but that until he was incarcerated in January, 1998, it was just talk and he did not complete any of them. Nonetheless, he believed he had made progress since that time, completing programs while he had been incarcerated. He testified that his children should not be removed from him just because of his drug addiction.
William R. and Elizabeth B. knew each other in high school and began an intimate relationship in 1990 when Elizabeth was twenty-one and George was twenty-three. From the beginning, their relationship was contentious, full of arguments and fights and drug abuse. In 1991, when Elizabeth became pregnant with her oldest son, George, she ceased using drugs and the child was born full term and well on September 19, 1991. After his birth, the relationship resumed its previous volatile pattern with attempts in 1993 and 1995 by Elizabeth to overcome her drug use. In November 18, 1994, the couple's second child, William R. was born.
William and Elizabeth lived on rural property owned by Williams' family on which he operated a junk yard. Elizabeth's family lived not far away on the same road. Often, as their relationship became too intense, Elizabeth and the children would stay with her relatives, within sight of George's home. DCF became involved with the family in November of 1994, when they confirmed issues of neglect and the Head Start worker then involved with young William became aware of the aggression and substance abuse that were part of this family's "normal" life. In April of 1995, a neglect petition was filed and the children were adjudicated neglected on January 26, 1996. At that time, an order of protective supervision was entered until June 23, 1996. Even after the expiration of the period of protective supervision, DFC remained involved as neither parent completed any of the various programs to which they had been referred. Neither did they attend to the children's needs and George was not in school regularly that fall. By October 23, 1996 a new neglect petition was filed and in late November an order of ex-parte custody to DCF secured after a physical altercation between George, Elizabeth's mother and grandmother over the children. George testified that on November 22, 1996, Elizabeth wanted to leave to seek drugs and was taking the children to be with her family, which George CT Page 5188 resisted. His resistance precipitated the fight, for which he was arrested and ultimately incarcerated.
A second neglect adjudication was made on February 6, 1997 and court expectations set, which George R. did not meet. He did not attend counseling, parenting classes, individual and anger management programs, drug evaluations and counseling. He was referred to various community programs including the Connections, Inc., for drug treatment, where he was discharged for his failure to comply. As a result of the altercation with Elizabeth's relatives, a protective order was issued directing George to have no contact with Elizabeth, her relatives or the children. In addition, as a result of this incident, as well as his previous record of domestic violence and convictions of possession of narcotics and larceny[2], George was incarcerated in January of 1998 and his expected release date is in October, 1999.
George admitted he had not seen or inquired about his children. He did not contact DCF about them, send them letters, cards or gifts, inquire about their welfare nor pay any support for them. He believes that the protective order prohibiting contact excuses this conduct. He has not taken advantage of those avenues open to him for indirect contact and information, nor did he seek to modify the order to secure supervised visitation at any time. He has therefore not seen or interacted with the two children since November, 1996, except during court-ordered evaluations.
The court concludes from George's own testimony that he never undertook to care daily for the needs of his children, but that Elizabeth was viewed by him as the primary caretaker. Further, he has little appreciation for the fact that more than two years have passed since the children have not seen him and that this is an extremely long period of time for them. By his attitude and claims, George demonstrated what the court appointed psychiatrist evaluator noted in his report of 1998. "(The) father is, at best, assessed as demonstrating a remarkable blindness to the impact of his behaviors and the nature of his relationship with his wife upon his children. Mr. R. at best has not achieved any ability to discuss the nature of his interpersonal and persona deficits nor has he appeared to begin to address the needed rehabilitative efforts." Dr. Sadler further found that:
 "Neither parent convincingly describes an adequate understanding of the services that are needed by their CT Page 5189 children or the services that are needed by themselves to correct their parenting deficits. Neither parent expresses an understanding of the impact of their drug use upon their children. Even when drugs were not specifically involved, neither parent appreciated their parenting impairments. Neither parent appreciated their responsibility for the removal of the children from their care, and neither parent acknowledged the long term multiple contacts with DCF and other care providing agencies."
George's testimony at trial underscored his inability to understand that the children required permanency soon. Despite his beginning awareness of the long term struggle he faces in his recovery from drug addiction, he did not comprehend that the domestic violence and drug use in his family life had harmed his children. He was only able to say he knew the violence between himself and Elizabeth was wrong, but blamed her for the event which lead to the removal of the boys in November, 1996.
The two boys in the meantime have been cared for since November, 1996 by the same foster family. There they have both flourished and are both doing well in school. George has since his placement revealed that he is afraid of his father. William does not report any memories and neither child asked for his father. Both children have specialized needs. George exhibits emotional and behavioral difficulties and William has developmental delays, conditions for which therapy is provided. Both of the boys are bonded to their foster parents
 B. ADJUDICATION A. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent,. . . . provided that such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes §17a-112(c)(1). On February 14, 1999, the court determined that such efforts were no longer appropriate for this family while granting a petition for the extension of the commitment of these children to DCF. Prior to that date, however, the court finds from the evidence, that DCF made reasonable efforts to reunify George R. with his two children, but as he admitted, he did not take CT Page 5190 advantage of the services offered.
 B. Adjudicatory Findings
The court finds, by clear and convincing evidence, that as of the date of the filing of the termination petitions on July 30, 1998, George R. had abandoned his children. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." Inre Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 14,438 A.2d 801 (1981). After their removal from the family's care, George made no efforts to demonstrate any concern for their welfare. Despite the protective order, the court concludes that George R. failed to take such steps to maintain such contact as were available to him. The facts supporting abandonment have continued for more than a year prior to the time the petitions were filed, in fact since November, 1996.
The court further finds, by clear and convincing evidence, that as of June 30, 1998 that George R. had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, he could assume a responsible position in their lives. Connecticut General Statutes § 17a-112(c)(3)(B). He made only minimal attempts to use the services that were offered to him. It is only since his incarceration in January, 1998 that he has made progress in dealing with his addiction. Such progress as he has made is untested, however, as he remains in a structured and controlled environment which removes many of the temptations of our larger society. He will not be released from incarceration until October, 1999 and then it will be at least some months, if not longer, before he would be in a position to parent these children. The court concludes that he was not rehabilitated as a parent and that giving him more time, when he has demonstrated only slow improvement and only while incarcerated, would be to place these children's lives on hold, when they have already been on hold since November 1996. The court finds that George R. cannot and did not rehabilitate within a reasonable period of time, given the ages and needs of his children.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, CT Page 5191 203, 504 A.2d 532 (1986), see also; In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795 (1984). George R. will not be rehabilitated within the foreseeable future. The court finds, based on the clear and convincing evidence, this ground had existed for longer than one year prior to the filing of the termination petitions.
The third ground alleged is that there is no ongoing parent-child relationship. "The question is whether they [the facts] substantiate a finding by clear and convincing evidence that no relationship ever existed between the parent and child, or that the relationship has terminated, without any future hope for its establishment or reestablishment." In re Migdalia M,6 Conn. App. 194, 211, 504 A.2d 532 (1986); In re Juvenile Appeal
(84-3), 1 Conn. App. 463, 473 A.2d 795, cert. denied,193 Conn. 802, 474 A.2d 1259 (1984); In re Juvenile Appeal (Anonymous),177 Conn. 648, 670-671, 420 A.2d 875 (1979). The court-appointed evaluator found that there was no relationship remaining between George and his children in August, 1998. Certainly, George R. had done nothing to establish and maintain a relationship since their removal from the home in 1996. From the facts, the court concludes that there is no reasonable likelihood that George would do so at some point in the future. The court finds that this ground had also existed for a period of time greater than one year prior to the filing of the termination petitions in July, 1998.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112(e) as to George R. None are made for Elizabeth B. due to her consent to the termination of parental rights.
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the children, case management services, referrals from substance abuse assessment and counseling, anger management and parenting classes.
2) Despite its finding that the court determined at a prior hearing that further reunification efforts are no longer appropriate, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family under all the circumstances prior to the entry of the court orders ending CT Page 5192 such efforts.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for George. He was not able to even minimally fulfill them.
4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Young George and William are progressing well in foster care. They have known no other nurturing home and have lived there now for two and one-half years. This is more than half of William's short life. Neither child expresses any interest or concern about their biological parents. In fact, George has negative memories of his father and fears him.
5) Finding regarding the ages of the children. George is now seven and will turn eight in September and William is four years old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. As detailed above, the court finds that George R. has not made any changes in his life to accommodate the care and nurturing of these two children.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. George, during the time prior to his incarceration, had adequate funds to pursue any permitted contact with his children as well as the services necessary for his rehabilitation. He did CT Page 5193 not do so, continuing to engage in substance abuse.
 D. DISPOSITION
George and William are progressing well in foster care. Their specialized needs are being met. They have been in foster care since November, 1996 and are in need of a permanent placement. Their father is not significantly closer today to making the necessary personal changes to parent them than he was when the children were removed from his care, although to his credit, he has taken some steps. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD), 189 Conn. 276,455 A.2d 1313 (1983). In addition, "because of the psychological effects of prolonged termination proceedings on young children, time is of the essence." In re Alexander V., 25 Conn. App. 741,748, 596 A.2d 930 (1992).
Based upon the foregoing, the court finds that it is in the best interests of the children that the rights of their parents to them be terminated. The court orders that a termination of parental rights enter with respect to Elizabeth B. and George G. The Commissioner of the Department of Children and Families is hereby appointed the children's statutory parent. The court further orders that a permanency plan for the children be submitted within ninety days. A review plan for them shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session
[2] The father's criminal record was admitted as Exhibit 6 and shows criminal conduct starting in 1988.