MEMORANDUM OF DECISION
CT Page 14650
On April 28, 1998, the Department of Children and Families, hereafter "DCF", filed a petition for the termination of the parental rights of Diana B. F. and Ramon C. to their son, Antonio B., then three years old. When he was under two months old, Diana left her infant with her mother and went to New York. Ramon C., his father, was uninvolved and incarcerated during the early years of the child's life. In September, 1995, a neglect petition was filed after Antonio's grandmother left Antonio and her own six year-old son in a car unattended for a long period of time while she went to a local bar. One year later, in September, 1996, both children were removed from the care of Antonio's grandmother after repeated referrals and incidents of domestic violence in the grandmother's home. On September 30, 1996, Antonio was adjudicated neglected and he has remained committed to the custody of DCF since that time.
The trial on the termination petition against the parents proceeded on October 20, 1999. Diana did not attend and her counsel did not know where she was. Her counsel nonetheless vigorously represented her client's position. At trial, DCF withdrew the termination petition against Ramon C., as the present plan for Antonio is reunification with his father. For the reasons stated below, the court grants the petition for termination of the parental rights of the respondent mother, Diana F., on the grounds of abandonment, her failure to rehabilitate herself as a parent of this child and because she no longer has an ongoing parent-child relationship with him. Connecticut General Statutes § 17a-112(c)(3)(A), (B) and (D).
From the evidence presented, the court finds the following facts:
 A. FACTS 1. Diana B. F., the mother.
Diana was just sixteen when Antonio was born. Hers is a multi-generational family history which shows the pernicious impact of drug and alcohol abuse as well as neglect. She was removed from her own mother when she was three years old, in various foster home placements and then returned to her mother's care when she was ten. She ran away from home as she grew older CT Page 14651 and also ran away from the DCF foster homes in which she was then placed in order to return to her mother. She stopped attending school when she was in the tenth grade and discovered she was pregnant with Antonio.
Antonio is the oldest of four children born to his mother. She has also reportedly relinquished custody of the other three younger children to the New York child protection authorities. Just a month after Antonio was born on January 22, 1995, Diana left him with her mother and went to New York. Her mother secured an order of temporary custody of Antonio through the probate court. In May, 1995, the grandmother was arrested for risk of injury to a minor after she left Antonio and her own son unattended in a car while she went to a local bar. During the summer of 1995, Diana returned to Connecticut to see her child and reported to DCF that her mother made her engage in sex for drugs and that she was involved with gang activity. By July, 1995, she returned to New York and was to be in the Job Corps in Vermont. In September, 1995, DCF filed a neglect petition against both parents.
Diana was discharged from the Job Corps in the fall of 1995 and was in and out of her mother's home and also in New York thereafter. At some point, visitation was also begun and for a time, Diana was herself again in foster care. By January of 1996, Diana ran away again and DCF did not know where she was, although Diana later reported she was in Waterbury and Meriden, actively engaged in substance abuse. Diana did not contact or cooperate with DCF again until October, 1996. Just prior to Diana's return in September, 1996, both Antonio and the grandmother's youngest son were removed from the grandmother's household due to domestic violence. There had been a number of referrals concerning domestic violence in the grandmother's home in 1995 and 1996. On September 20, 1996, both parents agreed to a neglect adjudication and Antonio was committed to the care and custody of the Commissioner of DCF. In October, 1996, Diana was referred by DFC for substance abuse assessment and treatment at SCAAD, a local drug treatment agency. She did not act upon this referral.
Diana's pattern of sporadic contact with DCF followed by no contact whatsoever is reflective of her earlier pattern of running away from her mother and then running away from foster homes to be with her mother. Her "running-away" occurred again, when in January of 1997, Diana went to New York. Five months later, she was back in Connecticut, contacted DCF and requested CT Page 14652 visitation. She had four visits with her son in June and July of 1997, when he was two and a half years old. By late July, 1997, Diana's whereabouts were again unknown. The same pattern repeated itself again in 1998 when in March, 1998, both Diana and Ramon were in court as a result of the service of the termination petition and she again requested visitation with Antonio. She had one visit with the child, and a week later again left for New York. Diana had earlier given birth to twins, who were then in her care.
Diana did not return to Connecticut again until September of 1998. In November, she contacted DCF. She was at that time actively involved with social services offered through Lawrence and Memorial Hospital which included counseling, a parent aide and random drug screens. These were the same services, the DCF social worker testified, to which DCF would have referred Diana, had she called them earlier. Diana gave birth to her fourth child in December, 1998 and appeared, according to the hospital social worker who testified before the court, to be making progress so that she could begin to raise her children. She had two visits with Antonio during this time. Housing, however, was a problem and when Diana was placed on a waiting list for the Thames River Family Program, she disappeared again. She was in New York in February and she placed the twins with the New York child protection authorities voluntarily in April, 1999. Since that time, except for brief contact in June, 1999, her whereabouts have been unknown, including to her own attorney. It is believed she is in New York City again.
The court finds, from the evidence, that Diana has not complied with the court expectations set for her. Antonio was adjudicated a neglected child and committed to DCF on September 30, 1996. His commitment has been extended since that time. During the time of his commitment, Diana has not been available to receive and benefit from services DCF and others attempted to provide to her. The court concludes, from the clear and convincing evidence, that Diana's unstable life and substance abuse have not ended and that she is not able to care for Antonio now or at any reasonably foreseeable time in the future.
Her visits with her son were sporadic. Her reasons for losing contact with him and leaving Connecticut were never apparent. From her son's point of view, however, the court must conclude, from the clear and convincing evidence, that she has abandoned him. Not only has she not visited, she has not sent cards or CT Page 14653 gifts nor inquired about his well being. She has never supported him. In short, she has repeated in her treatment of her son, all the parental neglect that she had herself endured when she was young. The same facts also demonstrate, by clear and convincing evidence, that there is no ongoing parent-child relationship between Diana and Antonio.
2. Antonio B., the child.
Antonio is now four and a half years old. He remains in the foster home in which he was first placed after his removal from his grandmother's care. He has done well there and has become close to his foster parents, in particular to his foster father. He relates well to the other children in the home and has benefited from Birth to Three services, which were provided to him.
In 1998, Antonio's father, Ramon C., contacted DCF some months after his release from prison to request contact with his son. Visits were begun and although there were some difficulties initially, with the assistance of a counselor at United Community Family Services and counseling for Antonio, the initial problems have subsided. While his foster family has indicated they wished to adopt him, at present the foster father, to whom Antonio is most closely attached, is no longer residing in the home. DCF's plan for Antonio is reunification with his father, who is employed and has done well in the reunification process.
 B. ADJUDICATION 1. Reasonable Reunification Efforts
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes § 17a-112(c)(1). Such findings were made by the court on April 9, 1999. The court does find, from the clear and convincing evidence, that reasonable reunification efforts had been made prior to the date of this finding. Such efforts were hampered by Diana's constantly leaving the state and her lack of participation and cooperation CT Page 14654 with DCF.
2. Adjudicatory Findings
The court has previously found, by clear and convincing evidence, that as of April 28, 1998, Diana had abandoned Antonio. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal (Docket No. 9489),183 Conn. 11, 14, 438 A.2d 801 (1981). While Diana has sporadically been involved with Antonio, she is at best a distant figure in his life and there is no connection between them.
Antonio V. was adjudicated a neglected child on September 30, 1996. The court further finds, by clear and convincing evidence, that as of April 28, 1998, Diana had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in his life. Connecticut General Statutes § 17a-112(c)(3)(B). "`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532
(1986), see also; In re Juvenile Appeal, 1 Conn. App. 463, 477,473 A.2d 795 (1984). The court concludes that Diana will not be rehabilitated within the foreseeable future.
The termination petition also alleges that there is no ongoing parent-child relationship between Antonio and his mother and to allow further time for the development of such a relationship would be detrimental to the best interests of the child. Connecticut General Statutes § 17a-112(c)(3)(D). The court so concludes from the clear and convincing evidence.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112(e):
1) Appropriate and timely services were provided by DCF to the family. The services include services to benefit the child, referrals for Diana to address her substance abuse issues and housing. More could not be done because of her unavailability. DCF also provided visitation and case management services. CT Page 14655
2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Diana and she was not able to even minimally fulfill them.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Antonio has had very little contact with his mother. He is close to his present foster father and is establishing a connection to his father.
5) Finding regarding the age of the child. Antonio turned four on January 22, 1999.
6) Finding regarding efforts of the mother to adjust her circumstances, conduct or conditions to make it in the best interests of the child to return him to her home in the foreseeable future and (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with her, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that Diana has not made any changes in their lives to accommodate the care and nurturing of this child. She has not begun to rehabilitate from the problems of substance abuse and her transient life style.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. DCF has taken steps to encourage Diana to have a meaningful relationship with the child and to rehabilitate herself, which she has been unable to accomplish. While Diana's financial situation made housing problematic in the winter of 1998, she CT Page 14656 herself did not take the steps necessary to secure the emergency housing that would have been available to her, had she remained in Connecticut.
 D. DISPOSITION
At trial, Antonio's father argued that Diana's rights should not be terminated, as at some point in the future she may wish to have contact with Antonio. He did not wish to be in favor of the proceedings which removed her rights to Antonio. Counsel for the mother also argued that, given the circumstances, it is not in Antonio's best interests for his mother's rights to him to be severed. Counsel for the child supported DCF and believed that his stability and permanency required such termination and was in the child's best interests. "Antonio does require permanency," the court-appointed psychologist evaluator testified. The court notes that Diana is no closer now to making the necessary personal changes to parent him than she was when these proceedings began. She has been unable, despite some efforts, to parent her other younger children.
The issue clearly presented is: "What is in Antonio's best interests?" Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In reJuvenile Appeal (84-CD), 189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[because of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V., 25 Conn. App. 741, 748,596 A.2d 930 (1992).
Based upon the foregoing, the court finds that it is in the best interests of Antonio that the rights of his mother, Diana B. F. to him be terminated. The court orders that a termination of parental rights enter with respect to Diana B. F. as to Antonio B.. The Commissioner of the Department of Children and Families is hereby appointed the child's statutory parent. The court further orders that a permanency plan for Antonio be submitted within ninety days. A review plan for him shall be filed in accordance with state and federal law.
Barbara M. Quinn, Presiding Judge Child Protection Session CT Page 14657